UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASTOR BK REALTY TRUST, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SHANDA GAMES LIMITED, YINGFENG ZHANG, LI YAO, LIJUN LIN, HENG WING CHAN, YONG GUI, SHAOLIN LIANG, and DANIAN CHEN,<br><br>Defendants. | Case No. _______________<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 10(b), 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMANDED** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Astor BK Realty Trust ("Plaintiff"), on behalf of itself and all others similarly situated, by and through its attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## <u>NATURE OF THE ACTION</u>

1. This is a class action brought by Plaintiff on behalf of itself and the other former ordinary stockholders and owners of American Depositary Shares ("ADS") of Shanda Games Limited ("Shanda" or the "Company") except Defendants (defined below) and their affiliates, against Shanda, Yingfeng Zhang ("Zhang"), Shanda's Chief Executive Officer and Chairman of its board of directors, Li Yao ("Yao"), Shanda's Chief Financial Officer and a Director, and the other members of Shanda's board of directors (together with Zhang and Yao, the "Board" or the "Individual Defendants") for their violations of Section 10(b), 14(a) and 20(a) of the Securities

Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78j(b), 78n(a), 78t(a), and SEC Rules 10b-5, 17 C.F.R. 10b-5, and 14a-9, 17 C.F.R. 240.14a-9, in connection with a merger between Shanda and Capitalhold Limited ("Capitalhold"). It is brought on behalf of all persons and entities who either held the publicly traded shares of Shanda on November 18, 2015 or sold such shares during the period between May 5, 2015 and November 18, 2015 (the "Class Period") and were harmed by the actions of Defendants.

2. On April 3, 2015, Shanda, an on-line game developer, operator and publisher, incorporated in the Cayman Islands, announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement"), by and among the Company, Capitalhold, and Capitalcorp Limited, a corporation and wholly owned subsidiary of Capitalhold ("Capitalcorp").

3. Pursuant to the terms of the Merger Agreement, Capitalhold acquired Shanda through the merger of Capitalcorp with and into Shanda, with Shanda surviving as a wholly owned subsidiary of Capitalhold (the "Merger"). Both Capitalhold and Capitalcorp were formed under the laws of the Cayman Islands solely for purposes of the Merger and on the date it became effective were beneficially owned by a consortium of other companies (the "Buyer Group"), including Ningxia Yilida Capital Investment Limited Partnership, a limited partnership formed under the laws of the People's Republic of China and an affiliate of Zhang. As of the date the Merger was announced, the Buyer's Group owned approximately 76.1% of the Company's issued and outstanding shares of stock and 90.9% of the total number of votes represented by the Company's issued and outstanding shares.

4. Pursuant to the terms of the Merger Agreement, Shanda stockholders received $3.55 per Class A ordinary shares and $7.10 per American Depositary Shares ("ADS") in cash in

exchange for, respectively, each share of ordinary Shanda common stock and of Shanda ADSs that they owned (the "Merger Consideration").

5. On November 18, 2015, an extraordinary general meeting ("EGM") of shareholders approved the merger, with 99.3% voting of the outstanding shares voted in favor of the transaction.

6. Between May 5, 2015 and October 13, 2015, in order to convince Shanda stockholders to vote in favor of the Merger, Defendants authorized the filing of a materially false and misleading Proxy Statement on a Schedule 14A (the "Proxy Statement") with the SEC, in violation of Sections 10(b), 14(a) and 20(a) of the Exchange Act.

7. The false and misleading nature of the Proxy Statement was revealed in certain ancillary proceedings. On February 4, 2016, Shanda filed a petition pursuant to Sec. 238 of the Cayman Islands corporate business statute dealing with the right to seek appraisal, seeking the court's determination of the fair value of Shanda's shares with respect to three dissenting shareholders. On April 25, 2017, the Grand Court of the Cayman Islands issued its decision in the appraisal action, awarding the dissenters $16.68 per ADS (amounting to $8.34 per share), an extraordinary 135% increase over the deal price.

8. Among other reasons for the Cayman court's holding was its finding that the forecasts of Shanda's future performance that Defendants had included in the Proxy Statement contained several material errors for which it further found no reasonable basis. Indeed, the court expressly quoted statements in the Proxy Statement purporting to assure investors and shareholders that the "forecasts were reasonably prepared on bases reflecting the best available estimates and good faith judgments of the management of the Company as to the future financial performance of the Company." Given its separate judgements as the unreasonableness of several material assumptions, the court implicitly found that these representations were false and misleading.

9. Accordingly, the Merger Consideration was inadequate, and the process by which Defendants consummated the Merger transaction was fundamentally unfair to Plaintiff and the other Shanda common stockholders, directly by reason of the materially false and misleading statements contained in the Proxy Statement, in violation of Sections 10(b), 14(a) and 20(a) of the Exchange Act.

10. As a direct result of these materially false and misleading statements, a class of shareholders were wrongfully induced to (a) sell their shares of Shanda common stock at artificially deflated prices during the period from May 5, 2015 to November 18, 2015 (the "Class Period") , or (b) refrain from exercising their appraisal rights under Cayman law as of November 18, 2015, including the right of owners of Shanda ADSs to transfer their ownership of the ADSs into shares of ordinary common shares of Shanda and then exercise such appraisal rights.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 10(b), 14(a) and 20(a) of the Exchange Act and SEC Rules 10b-5 and 14a-9.

12. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

13. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants have received substantial

compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**PARTIES**

14. Plaintiff was at all relevant times the owner of Shanda common stock and held such stock since prior to the wrongs complained of herein.

15. Defendant Shanda is a Cayman Islands corporation with its principle executive offices located at No. 1 Office Building, No. 690 Bibo Road, Pudong New Area, Shanghai, 201203, People's Republic of China. Shanda is an on-line game developer, operator and publisher. Until the end of the Class Period, Shanda common stock traded on the NASDAQ under the ticker symbol "GAME".

16. Defendant Zhang was at all relevant time the Chief Executive Officer and Chairman of the Board the Company.

17. Defendant Yao was at all relevant times the Chief Financial Officer and a director of the Company.

18. Defendant Lijun Lin ("Lin") was at all relevant times a director of the Company.

19. Defendant Heng Wing Chan ("Chan") was at all relevant times a director of the Company.

20. Defendant Yong Gui ("Gui") was at all relevant times a director of the Company.

21. Defendant Shaolin Liang ("Liang") was at all relevant times a director of the Company.

22. Defendant Danian Chen ("Chen") was at all relevant times a director of the Company.

23. The defendants identified in paragraphs 16 through 22 are collectively referred to herein as the "Individual Defendants" and/or the "Board," and collectively with Shanda the "Defendants."

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action on its own behalf and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of (a) all holders of Shanda common stock, including ADSs,as of November 18, 2015, and (b) all sellers of Shanda common stock, including ADSs, between May 5, 2015 and November 18, 2015, who were harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

25. This action is properly maintainable as a class action for the following reasons:

(a) the Class is so numerous that joinder of all members is impracticable. As of the December 31, 2014, the end of Shanda's last fiscal year as a public company, there were 271.6 million shares of Shanda common stock outstanding, including at least 13,043,500 ADSs, which had been offered in Shanda's initial public offering in 2009;

(b) the holders of these shares are believed to be geographically dispersed;

(c) there are questions of law and fact which are common to the Class and which predominate over questions affecting individual Class members. The common questions include, inter alia, the following:

(i) whether Defendants have violated Section 14(a) of the Exchange act and Rule 14a-9 promulgated thereunder;

(ii) whether Defendants have violated Section 10(b) of the Exchange act and Rule 10b-5 promulgated thereunder;

(iii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

(d) Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

(e) Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

(f) the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and

(g) Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

### A. Company Background and the Merger

26. Shanda is an on-line game developer, operator and publisher and one of China's largest video companies.

27. On April 3, 2015, the Company issued a press release announcing the Merger ("April 3, 2015 Press Release"), which states in relevant part:

> **Shanda Games Limited Enters into Definitive Merger Agreement for Going Private Transaction**
>
> HONG KONG, April 3, 2015 /PRNewswire/ -- Shanda Games Limited (NASDAQ: GAME) ("Shanda Games" or the "Company"), a leading online game developer, operator and publisher in China, announced today that it had entered into an

Agreement and Plan of Merger (the "Agreement") with Capitalhold Limited ("Parent") and Capitalcorp Limited, a wholly owned subsidiary of Parent ("Merger Sub").

Pursuant to the Agreement, Parent will acquire the Company for cash consideration equal to US$3.55 per ordinary share of the Company (each, an "Ordinary Share") and US$7.10 per American Depositary Share of the Company, each representing two Class A Ordinary Shares (each, an "ADS"), in a transaction valuing the Company at approximately US$1.9 billion. This price represents a premium of 46.5% and 53.8%, respectively, over the Company's 30- and 60-trading day volume-weighted average price as quoted by NASDAQ Global Select Market ("NASDAQ") on January 24, 2014, the last trading date immediately prior to the Company's announcement on January 27, 2014 that it had received a "going private" proposal.

The consideration to be paid to holders of Ordinary Shares and ADSs pursuant to the Agreement also represents an increase of approximately 2.9% from the original US$3.45 per Ordinary Share and US$6.90 per ADS offer price included in the January 27, 2014 "going private" proposal.

Immediately following consummation of the transactions contemplated by the Agreement, Parent will be beneficially owned by a consortium (the "Buyer Group") comprising (i) Ningxia Yilida Capital Investment Limited Partnership, a limited partnership formed under the laws of the People's Republic of China and an affiliate of the Company's acting CEO, Mr. Yingfeng Zhang, (ii) Ningxia Zhongyincashmere International Group Co., Ltd. ("Ningxia"), a company formed under the laws of the People's Republic of China, (iii) Orient Hongtai (Hong Kong) Limited, a company incorporated and existing under the laws of Hong Kong ("Orient Hongtai"), (iv) Orient Hongzhi (Hong Kong) Limited ("Orient Hongzhi"), a company incorporated and existing under the laws of Hong Kong and an affiliate of Orient Hongtai, (v) Hao Ding International Limited ("Hao Ding"), a company established under the laws of the British Virgin Islands, (vi) Ningxia Zhengjun Equity Investment Partnership Enterprise (Limited Partnership) ("Zhengjun Investment"), a limited partnership organized and existing under the laws of the People's Republic of China and an affiliate of Mr. Yingfeng Zhang, (vii) Ningxia Silkroad Equity Investment Partnership Enterprise (Limited Partnership) ("Ningxia Silkroad"), a limited partnership organized and existing under the laws of the People's Republic of China and an affiliate of Ningxia, and (viii) Ningxia Zhongrong Legend Equity Investment Partnership Enterprise (Limited Partnership) ("Zhongrong

> Legend"), a limited partnership organized and existing under the laws of the People's Republic of China and an affiliate of Ningxia. Merger Sub is a direct wholly owned subsidiary of Parent. As of the date of the Agreement, the Buyer Group collectively beneficially owns approximately 75.7% of the Company's issued and outstanding Ordinary Shares, representing approximately 90.7% of the total number of votes represented by the Company's issued and outstanding Ordinary Shares.
>
> Subject to the terms and conditions set forth in the Agreement, Merger Sub will merge with and into the Company, with the Company continuing as the surviving corporation and becoming a wholly owned subsidiary of Parent (the "Merger"), and each of the Ordinary Shares issued and outstanding immediately prior to the effective time of the Merger (including Ordinary Shares represented by ADSs) will be cancelled in consideration for the right to receive US$3.55 per Ordinary Share or US$7.10 per ADS, in each case, in cash, without interest and net of any applicable withholding taxes, except for (i) 48,759,187 Class B Ordinary Shares held by Yili Shengda Investment Holdings (Hong Kong) Company Limited, an affiliate of Mr. Yingfeng Zhang, 48,759,187 Class B Ordinary Shares held by Zhongrong Shengda Investment Holdings (Hong Kong) Company Limited, an affiliate of Ningxia, 80,577,828 Class A Ordinary Shares held by Zhongrong Investment Holdings (Hong Kong) Co., Ltd., an affiliate of Ningxia, 61,776,334 Class A Ordinary Shares held by Orient Hongtai, 61,776,335 Class A Ordinary Shares held by Orient Hongzhi, 107,438,129 Class A Ordinary Shares held by Hao Ding and any Ordinary Shares held by Parent, the Company or any of their subsidiaries immediately prior to the effective time of the Merger, each of which will be cancelled without payment of any consideration or distribution therefor, and (ii) Ordinary Shares owned by holders who have validly exercised and not effectively withdrawn or lost their rights to dissent from the Merger pursuant to Section 238 of the Companies Law of the Cayman Islands, which Ordinary Shares will be cancelled at the effective time of the Merger for the right to receive the fair value of such Ordinary Shares determined in accordance with the provisions of Section 238 of the Companies Law of the Cayman Islands.

28. The Merger Consideration Shanda stockholders received was unfair and inadequate because, among other things, the intrinsic value of Shanda common stock was materially in excess of such Merger Consideration; particularly, in light of the Company's prospects for future growth and earnings.. Members of the Class were fraudulently induced to either sell their shares of Shanda

stock, including ADSs, at artificially deflated prices or to accept the unfair and inadequate Merger Consideration by means of the false and misleading representations in the Proxy Statement.

29. The false and misleading nature of the Proxy Statement was revealed in certain ancillary proceedings. On February 4, 2016, Shanda filed a petition pursuant to Sec. 238 of the Cayman Islands corporate business statute dealing with the right to seek appraisal, seeking the court's determination of the fair value of Shanda's shares with respect to three dissenting shareholders. On April 25, 2017, the Grand Court of the Cayman Islands issued its decision in the appraisal action, awarding the dissenters $16.68 per ADS (amounting to $8.34 per share), an extraordinary 135% increase over the Merger Consideration. While on March 6, 2018, the Court of Appeal of the Cayman Islands partially reversed that ruling, holding that a minority discount should have been applied, the court consequently awarded the dissenting shareholders $12.84 per ADS (amounting to $6.43 per share), a remarkable 81% premium over the Merger Consideration.

30. Among other reasons for the holding by the lower Cayman Island court, was its finding that the forecasts of Shanda's future performance that Defendants had included in the Proxy Statement contained several material errors for which it further found no reasonable basis. The court also expressly quoted statements in the Proxy Statement purporting to assure investors and shareholders as to the reasonableness of the forecasts which the Court impliedly found to be without factual basis.

**B. The Materially Incomplete and Misleading Proxy Statement**

31. On May 5, 2015, Shanda filed its initial Proxy Statement with the SEC in connection with the Merger, and filed amendments of the Proxy Statement through October 13, 2015. The Proxy Statement solicited the Company's stockholders to vote in favor of the Merger. Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material

misrepresentations or omissions. However, the Proxy Statement misrepresented and/or omitted material information that was necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Merger and/or seek appraisal rights, as well as information necessary to determine the true value of Shanda common stock, in violation of Sections 10(b), 14(a) and 20(a) of the Exchange Act.

***Material False and Misleading Statements Concerning Shanda's Projections***

32. The Proxy Statement stated that Shanda's management prepared and provided to the special committee of its Board considering the Merger, the Buying Group, and the special committee's financial advisor, Bank of America Merrill Lynch, the following projections of the Company's future performance: (1) in March 2014, a set of multi-year projections for the years 2014 through 2018 (the "March 2014 Projections"), and (2) in March 2015, an updated set of multi-year projections for the years 2015 through 2019 (the "March 2015 projections"). A table summarizing these projections, setting forth for the relevant fiscal years the Company's projected revenue, gross profit, operating expenses, income from operations, operating margin and net income was reproduced in the Proxy Statement.

33. While the Proxy Statement warned that the forecasts were not a "guarantee of performance," Defendants made representations in the Proxy Statement that created the impression that forecasts were prepared in a reasonable and careful manner. Thus, the Proxy Statement stated that "in compiling the projections, the Company's management took into account historical performance of legacy games, projected launch dates of new games in the Company's pipeline, and projected revenues for each new game, combined with estimates regarding gross margin, operating expenses, tax rates, capital expenditure, EBITDA and net income."

34. Further, the Proxy Statement stated that "with respect to the Management Forecasts, Merrill Lynch was advised by the Company, and assumed, that such forecasts were reasonably prepared on bases reflecting the best available estimates and good faith judgments of the management of the Company as to the future financial performance of the Company."

35. The Grand Court of the Cayman Islands explained in its appraisal opinion that Shanda was compelled during the proceedings to submit corrected projections (which corrected some but not all of the errors identified by the dissenters' expert), and then the court examined other clear errors in the projections set forth in the Proxy. Notably, even the experts retained by the Company had concluded that the fair value of the Company was materially higher, by 35%, than the Merger Consideration, *i.e.* $9.56 per ADS.

***Material Misrepresentations and Omissions Concerning Shanda's Projections***

**A. Revenue Intensity**

36. Shanda projected the revenue that would be earned by each of its pipeline games on the basis of its "game type," where the game type then determined the proportion of a modelled pattern of revenue that the game would earn (e.g. certain mobile games were projected to earn 100%, others 50%, and others 25% of the modelled pattern of revenue for a mobile game). However, for some of the mobile games projected to be launched from 2016 and beyond, the revenue proportions (what Shanda called "revenue intensity") did not match the assumed game types. However, the model did apply licensing fees and royalty payments attributable to each game based on those categorizations. As a result, as one example, a game that was incorrectly shown as having a revenue intensity of 25% was modelled as carrying licensing/royalty fees attributable to a four times more successful game with 100% revenue intensity. When Shanda corrected this miscategorization, it increased equity value by RMB 616 million.

37. The court concluded that while this was a significant error that clearly needed to be corrected, Shanda also failed to explain the error when given an opportunity to do so, and that as a result rendered "the forecasts in this respect . . . unreliable." The court also concluded that the dissenters' expert's "methodology seems to be reasonable and realistic and, insofar as he has adopted a correction that treats revenue intensity as being in need of an upward adjustment…this seems to be fair as it is appropriate."

**B. Depreciation**

38. Rather than using depreciation and amortization rates Shanda used in its previously filed financial statements, Shanda modelled depreciation and amortization as a function of revenue. As a result, Shanda's projections showed its capital assets' book value falling rapidly over the forecast period and becoming negative from 2018. The dissenters' expert opined that this was "quite simply, not possible." He also stated that Shanda's modelling principle in these projections was "wrong as a matter of basic accounting," as "businesses plan their capital expenditure at the level necessary to support their anticipated levels of sales and depreciation and amortization are merely accounting entries which flow from the amounts of capital expenditures." That is, "you plan capital expenditures, you don't plan depreciation."

39. The Court stated that the Company's "revenue-based approach" may be acceptable in some circumstances, but "where the use of this method produces projections which appear to be unreasonable and unrealistic, it is necessary and appropriate for the Court to take into account and adopt corrections which can be shown to be reasonable and realistic." After review of the dissenters' testimony on this issue, including that Shanda's approach is "just wrong," the court found that expert's "approach to be convincing and a reasonable and reliable one." Implicit in this finding, when combined with its prior statement as to the extent to which Shanda's revenue-based

approach was appropriate, the court found that Shanda produced results in the projections included in the Proxy Statement that were "unreasonable and unrealistic."

40. The court also accepted the dissenter expert's correction of this error, resulting in an increase in equity value of RMB 360 million, or an increase of $0.22 per ADS.

**C. Mir II Mobile Revenues**

41. The dissenters' expert had opined that Shanda's financial projections failed to properly take into account the success and revenues likely to be generated by its Mir II mobile game. Shanda had merely projected revenues from the game of RMB 91 million through its whole assumed lifespan across 2015 and 2016, or US $15 million. In fact, as the dissenter's expert estimated, Shanda earned approximately RMB 1.8 billion to RMB 2.1 billion of revenue from the game over the 8 month period from August 2015 to March 2016. In other words, it earned in less than a year approximately 20 times the total revenue Shanda had projected it would realize in two years. Moreover, both experts agreed that "by the time of the valuation date in 2015 it was known that the Mir II mobile game launched after the projections was very successful." The valuation date is the date of the shareholder vote, with the date of the final proxy only a few weeks before.

42. The court concluded that the dissenters' expert was "correct to identify the revenue generated by the Mir II mobile game as material and justifying an adjustment to Shanda's projections and that the estimates made by [the expert] are reasonable and reliable" as he derived his estimates of revenue on information provided from Shanda. As such, Shanda's forecasted revenue for the game "is substantially below a reasonable forecast."

**<u>LOSS CAUSATION</u>**

43. During the Class Period, as detailed herein, Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially deflated the prices of Shanda securities, and operated as a fraud or deceit on Class Period sellers

of Shanda securities by misrepresenting the value and prospects for the Company's business and growth prospects. As a result of their sales of Shanda securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, i.e., damages, under the federal securities laws.

44. As a further result of Defendants false and misleading statements in the Proxy Statement, members of the Class who continued to hold shares of Shanda stock on November 18, 2015, the date shareholders that approved the Merger, were deceived into foregoing their appraisal rights under Cayman law, which would have provided them with significantly greater value than the Merger Consideration. Accordingly, the deceptive Proxy Statement was an essential link in accomplishing the forfeiture of this legal right.

**ADDITIONAL SCIENTER ALLEGATIONS**

45. During the Class Period, as alleged herein, Defendants Zhang and Yao acted with scienter in that they knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and misleading; knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

46. Defendants Zhang and Yao permitted Shanda to release these false and misleading statements and failed to file the necessary corrective disclosures, which artificially deflated the value of the Company's stock.

47. As set forth herein, Defendants Zhang and Yao, by virtue of their receipt of information reflecting the true facts regarding the material components of the projections included within the Proxy Statement, their control over, receipt, and/or modification of Shanda's allegedly

materially misleading statements and omissions; and/or their positions with the Company that made them privy to confidential information concerning Shanda; and/or Defendant Zhang's clear interest, as a significant member of the Buying Group, to induce the public shareholders of Shanda to accept an unfair and inadequate purchase price for their shares, participated in the fraudulent scheme alleged herein.

48. Defendants Zhang and Yao are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on sellers of Shanda securities by disseminating materially false and misleading statements and/or concealing material facts. The scheme deceived the investing public regarding Shanda's business, operations, and management and the intrinsic value of Shanda securities and caused Plaintiff and members of the Class to sell Shanda securities at artificially deflated prices.

**INAPPLICABILITY OF STATUTORY SAFE HARBOR**

49. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Further, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements were made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Shanda who knew that the statement was false when made.

**PRESUMPTION OF RELIANCE**

Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a) Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b) the omissions and misrepresentations were material;

(c) the Company's stock traded in an efficient market;

(d) the misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(e) Plaintiff and other members of the Class sold Shanda securities at the time Defendants misrepresented or failed to disclose material facts and before the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

50. At all relevant times, the markets for Shanda securities were efficient for the following reasons, among others:

(a) as a regulated issuer, Shanda filed periodic public reports with the SEC;

(b) Shanda was followed by several securities analysts employed by major brokerage firm(s) who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firm(s) and that were publicly available and entered the public marketplace; and

(c) Shanda common stock was actively traded in an efficient market, namely the NASDAQ, under the ticker symbol "GAME."

51. As a result of the foregoing, the market for Shanda securities promptly digested current information regarding Shanda from all publicly available sources and reflected such information in Shanda's stock price. Under these circumstances, all sellers of Shanda securities

during the Class Period suffered similar injury through their sale of Shanda's securities at artificially deflated prices and the presumption of reliance applies.

52. Further, to the extent that the Exchange Act Defendants concealed or improperly failed to disclose material facts with regard to the Company, Plaintiff is entitled to a presumption of reliance in accordance with *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153 (1972).

**COUNT I**

**On Behalf of Plaintiff and the Class Against Defendants Shanda, Zhang and Yao for Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder**

53. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54. During the Class Period, Defendants Shanda, Zhang and Yao disseminated or approved the false statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

55. Defendants Shanda, Zhang and Yao violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they:

(a) Employed devices, schemes, and artifices to defraud;

(b) Made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c) Engaged in acts, practices, and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their sale of Shanda securities during the Class Period.

56. Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they received artificially deflated prices for Shanda securities. Plaintiff and the Class would not have sold Shanda securities at the prices they received, or at all, if they had been aware that the market prices had been artificially and falsely deflated by Defendants' misleading statements.

57. As a direct and proximate result of these Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their sale of Shanda securities during the Class Period.

**COUNT II**

**On Behalf of Plaintiff and the Class Against All Defendants forViolations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

58. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

59. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that registration statement communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

60. Defendants have issued the Proxy Statement with the intention of soliciting shareholder support for the Merger. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which contains materially false and misleading statements as to critical information regarding the Company's financial projections.

61. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to Shanda stockholders although they could have done so without extraordinary effort.

62. Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most, if not all, of the omitted information identified above in connection with their decision to approve and recommend the Merger transaction. Defendants knew or were negligent in not knowing that the material information identified above had been misrepresented the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to review the projections provided to Bank of America Merrill Lynch in connection with their receipt of its fairness opinion, and be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

63. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do

carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement, the preparation and review of strategic alternatives, and the review of both companies' financial projections.

64. The misrepresentations and omissions in the Proxy Statement were material to Plaintiff and the Class, deprived them of their right to cast an informed vote, and deprived them of an opportunity to make an informed decision of whether to seek appraisal remedies under Cayman law.

**COUNT III**

**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

65. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

66. The Individual Defendants acted as controlling persons of Shanda within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Shanda, and participation in and/or awareness of Shanda's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Shanda, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

67. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

68. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Shanda, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The misrepresented information identified above was reviewed by the Board prior to voting on the Merger. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Merger. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

69. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

70. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

71. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Sections 10(b) and 14(a) and Rules 10b-5 and 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class were irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief in its favor and in favor of the Class and against Defendants as follows:

A. Declaring that this action is properly maintainable as a Class action and certifying Plaintiff as Class representative;

C. With respect to the Section 14(a) proxy violations, granting Plaintiff and the Class rescissory damages;

D. With respect to the Section 10(b) securities fraud claims, awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

E. Directing the Individual Defendants to account to Plaintiff and the Class for all damages suffered as a result of the Individual Defendants wrongdoing;

F. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

G. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: March 19, 2018

/s/ Eduard Korsinsky_______
**LEVI & KORSINSKY, LLP**
Eduard Korsinsky
30 Broad Street, 24th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email:ek@zlk.com