**O'Melveny**

O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036-6537

T: +1 212 326 2000
F: +1 212 326 2061
omm.com

Abby F. Rudzin
D: +1 212 326 2033
arudzin@omm.com

October 15, 2018

**VIA ECF AND EMAIL**
The Honorable Andrew L. Carter, Jr.
United States District Court
Southern District of New York
40 Foley Square, Room 435
New York, NY 10007

Re:   *In re Shanda Games Limited Securities Litigation, No. 1:18-cv-02463-ALC*

Dear Judge Carter:

  We represent Defendants Shanda Games Limited and Mr. Heng Wing Chan and write to request a conference in anticipation of a motion to dismiss Plaintiff David Monk's claims.

  **Background.**  Shanda is a Cayman Islands corporation headquartered in China that previously listed American Depository Shares ("ADS") on Nasdaq.  (Compl. ¶ 5.)  Mr. Monk is a former Shanda ADS holder.  In 2015, Shanda entered into a going-private transaction (the "Transaction") in which a buyer group that included Shanda's controlling shareholders bought out public shareholders for the negotiated price of $7.10 per ADS.  (*Id.* ¶¶ 10, 103.)  Under Cayman law, shareholders could object to the Transaction and seek appraisal of their shares.  A Cayman court would then choose a "fair value" for the shares that could be "greater, the same as, or less than" the deal price.  (*Id.* ¶ 148.)  Some shareholders (the "Dissenters") exercised their appraisal rights; Monk chose not to.  (*Id.* ¶¶ 22, 31.)

  The shareholders approved the Transaction in Hong Kong.  (*Id.* ¶ 22.)  Monk and others who did not exercise their appraisal rights were then deemed to have sold their shares at the deal price.  (*Id.* ¶¶ 145, 150.)  As for the Dissenters, the Cayman trial court found that the fair value of Shanda ADS was $16.68, reduced to $12.84 on appeal.  (*Id.* ¶ 156–57.)  Having avoided the delay and expense of appraisal litigation (and the risk of a lower number), Monk now seeks appraisal rights by invoking the Securities Exchange Act.

  Monk claims fraud and insider trading, alleging that Defendants made false and misleading statements in two press releases and the two proxy statements for the Transaction. He contends that Defendants (i) misled shareholders by characterizing the deal price as "fair"; (ii) included in the proxy statements financial projections provided to the buyers in March 2015 (the "March 2015 Projections") that failed to account for the success of Shanda's new video game, Mir II Mobile; (iii) failed to disclose the success of Mir II Mobile; and (iv) falsely represented that the March 2015 Projections were the projections provided to the buyers when in fact the buyers received lengthier projections.  (*Id.* ¶¶ 177(a)–(e).)

  Monk's claims should be dismissed for several reasons.  First, the Exchange Act does not apply to foreign transactions like the Transaction here.  *See Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 265 (2010).  Second, he has not adequately pleaded three essential elements

of a Section 10(b) claim: (i) that Defendants made a material misstatement or omission; (ii) that Defendants acted with scienter; and (iii) that Monk relied on any alleged misstatement or omission. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007). And because his Section 10(b) claim fails, his Section 20(a) and 20A claims also fail.

**Morrison.** The Court's decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), precludes Monk's claims because he "sold" his ADS abroad. Monk concedes as much, admitting that he "held 6,500 ADS of Shanda as of November 18, 2015, *when they were sold through the Transaction*." (Compl. ¶ 31.) Monk therefore must show that the parties "incur[red] irrevocable liability to carry out the transaction within the United States" or that title "passed within the United States." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 69 (2d Cir. 2012). But "irrevocable liability" occurred when the Transaction was approved in Hong Kong, where title was also transferred—or cancelled—when the Transaction became effective. (*See* Oct. 13, 2015 Proxy Statement at A–7 ("[B]*y virtue of the [Transaction] and without any action on the part of* . . . the holders," the ADS "shall be *cancelled* in exchange for the right to receive $7.10 in cash per ADS." (emphasis added)).) The Exchange Act therefore does not apply. *See, e.g.*, *In re Satyam Comput. Servs. Ltd. Sec. Litig.*, 915 F. Supp. 2d 450, 475 (S.D.N.Y. 2013) (rejecting Exchange Act claim because parties incurred irrevocable liability in India where exercise of plaintiff's option to purchase ADS occurred and transfer of securities was completed upon option exercise).

**No Actionable Misstatements or Omissions.** Monk's alleged misstatements fall into four categories, none of which gives rise to a Section 10(b) claim.

*True Statements of Historical Facts.* Monk cannot recover for statements reporting the process and results of the Company's evaluation of the Transaction because these are true statements of historical facts. *See In re Mobile Telecomm. Techs. Corp. Sec. Litig.*, 915 F. Supp. 828, 832–33 (S.D. Miss. 1995) (true statements of historical facts "are not actionable as a matter of law"). He likewise cannot recover for statements about the March 2015 Projections being provided to the buyers because they are exactly what the proxy statements presented them as: a summary of projections provided to the buyers. (*See* Compl. ¶¶ 11, 18.)

*Forward-Looking Statements.* The March 2015 Projections are inactionable forward-looking statements. Under the "bespeaks caution" doctrine, a "forward-looking statement accompanied by sufficient cautionary language is not actionable because no reasonable investor could have found the statement materially misleading." *Iowa Pub. Emps.' Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 137, 141 (2d Cir. 2010). Shanda repeatedly cautioned that "[t]he financial projections are forward-looking statements" and "the Company undertakes no obligations to update" them. (May 5, 2015 Proxy Statement at 38–39, 104; Oct. 13, 2015 Proxy Statement at 49–50, 114–15.) And Monk's failure to plead facts showing that these statements were made with actual knowledge that they were false or misleading dooms his claim. *See In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 571 (S.D.N.Y. 2014) (noting that "without *contemporaneous* falsity, there can be no fraud") (emphasis in original).

*Opinions.* Statements that Shanda and the buyers "believe[d]" that the Transaction was fair (Compl. ¶¶ 232, 236) are inactionable opinions, unless Plaintiff can show that Defendants did not hold the belief professed; facts supplied to support the belief are untrue; or Defendants omitted information that makes the statement misleading to a reasonable investor. *Martin v. Quartermain*, 732 F. App'x 37, 40 (2d Cir. 2018). While Monk alleges that Defendants did not

believe that the Transaction was fair (Compl. ¶ 178), he offers insufficient factual support for his conclusion. He points to errors in the March 2015 Projections uncovered during the appraisal action (*id.*), but he does not—and cannot—show that Defendants knew of the alleged errors *at the time the proxy statements were issued*. The statements were therefore not false and misleading because "a sincere statement of pure opinion is not an untrue statement of material fact, regardless of whether an investor can ultimately prove the belief wrong." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015).

*Omissions.* Monk contends that the proxy statements were misleading because they provided projections only through 2019 while the buyers received projections through 2020. (Compl. ¶ 177(d).) But the proxy statements also made clear that they were providing only a summary of the financial projections. (*See id.* ¶¶ 112–13 (conceding that proxy statements included only a "summary" of "the financial projections").) Moreover, Monk must show that "the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). The disclosure of an additional year of projections—presumably based on the same faulty assumptions Monk now challenges—would not have "significantly altered the 'total mix' of information."

Monk also alleges that an October 19, 2015 press release was false and misleading because when "touting the success of Mir II Mobile" Shanda "omitted to tell the market that this incredible success . . . had not been factored into [the March 2015 Projections]." (Compl. ¶ 242.) But an "omission is actionable only if . . . the speaker had a duty to disclose" it, *City of Roseville Emps. Ret. Sys. v. Nokia Corp.*, 2011 WL 7158548, at *8 (S.D.N.Y. Sept. 6, 2011), or if "a corporate statement [is made] that would otherwise be inaccurate, incomplete, or misleading," *Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 101 (2d Cir. 2015). The press release was about Mir II Mobile's success; the failure to mention six-months-old projections did not render it "inaccurate, incomplete, or misleading."

**No Scienter.** Monk's only allegation of Chan's scienter is that "he was a member of Shanda's audit committee." (Compl. ¶ 260.) This does not meet Monk's high burden. *See Schwab v. E*Trade Fin. Corp.*, 285 F. Supp. 3d 745, 757 (S.D.N.Y. 2018) (plaintiff cannot allege scienter "by merely pointing to [a defendant's] job title"). As for Shanda, while errors in the March 2015 Projections were found in the appraisal action, that does not show that Defendants knew that the projections were false when made. *See In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 532–33 (S.D.N.Y. 2010) ("complaint must contain allegations of specific contemporaneous statements or conditions that demonstrate the . . . false or misleading nature of the statements when made"). Nor can Monk point to the supposed scienter of Shanda executives that were part of the buyer group because an executive's scienter cannot be attributed to the company when the alleged bad acts were committed for the executive's personal benefit. *See, e.g.*, *Barrett v. PJT Partners Inc.*, 2017 WL 3995606, at *8 (S.D.N.Y. Sept. 8, 2017) ("The adverse-interest exception directs a court not to impute to a corporation the bad acts of its agent when the fraud was committed for personal benefit."). Any scheme by the buyers to depress the deal price would have hurt Shanda, so the buyers' scienter cannot be imputed to it.

**No Reliance.** Monk does not claim actual reliance on the documents but instead refers to *Affiliated Ute Citizens v. United States*, 406 U.S. 128 (1972). (*See* Compl. ¶ 282.) Under *Affiliated Ute*, "the element of reliance [is] presumed in cases involving primarily omissions, rather than affirmative misstatements, because proving reliance in such cases is, in many

3

situations, virtually impossible." *Waggoner v. Barclays PLC*, 875 F.3d 79, 93 (2d Cir. 2017). Courts have thus applied the *Affiliated Ute* presumption only to cases "involving primarily omissions, rather than affirmative misstatements." *Id*. Because Plaintiff alleges numerous affirmative misstatements (*see* Compl. ¶¶ 177–239), the *Affiliated Ute* presumption does not apply. *See, e.g.*, *Schwab*, 285 F. Supp. 3d at 754 (rejecting *Affiliated Ute* presumption where "plaintiff readily points to numerous affirmative representations by the defendants"); *In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d 512, 536 (S.D.N.Y. 2012) (rejecting *Affiliated Ute* presumption where complaint alleged both misrepresentations and omissions).

Monk alternatively alleges that he is entitled to the "fraud on the market" presumption articulated in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988). (*See* Compl. ¶ 283.) Under *Basic*, it is presumed that an "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price." 485 U.S. at 247. But Monk did not sell his ADS "at the price set by the market"; he received the price negotiated with Defendants as part of the going-private transaction. The "fraud on the market" presumption does not apply. *See, e.g.*, *Chavin v. McKelvey*, 25 F. Supp. 2d 231, 238 (S.D.N.Y. 1998), *aff'd*, 182 F.3d 898 (2d Cir. 1999) (no "fraud on the market" reliance where plaintiffs engaged "in the course of face-to-face negotiations with [the defendant], not in the course of any open market transaction").

Respectfully submitted,

/s/ Abby F. Rudzin
Abby F. Rudzin
*of* O'MELVENY & MYERS LLP

cc:  All counsel of record via ECF and email