USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 9/30/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SHANDA GAMES LIMITED SECURITIES LITGATION | 1:18-cv-02463 (ALC)<br><br>**ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

Lead Plaintiff David Monk ("Plaintiff") brings this lawsuit individually and on behalf of a class of former stockholders and former owners of American Depository Shares ("ADS") against Defendants Shanda Games Limited ("Shanda" or "Defendant"), Yingfeng Zhang, Li Yao Lijun Lin, Heng Wing Chan, Yong Gui, Shaolin Liang, and Danian Chen, alleging violations of the Securities Exchange Act of 1934. Before the Court is Defendant Shanda's motion to dismiss the Amended Complaint for failure to state a claim upon which relief can be granted. *See* ECF No. 40. For the reasons stated below, Defendant Shanda's motion to dismiss is **GRANTED**.

## BACKGROUND

### I. Factual Background

Defendant Shanda is a global video game company headquartered in the Cayman Islands. Amend Compl., ¶ 5, ECF No. 25. In 2009, Shanda underwent an initial public offering and listed American Depository Shares ("ADS") on NASDAQ. *Id.* ¶¶ 32, 59. On April 3, 2015, Shanda announced that it had entered into a merger agreement that would allow the company to go private. *Id.* ¶¶ 10, 102. Although the Buyer Group controlled enough votes to enter into the transaction, Defendant Shanda was required to file initial and final proxy statements (collectively, "Proxies") to allow shareholders to determine whether they wanted to exercise appraisal rights. *Id.* ¶ 108. Defendant Shanda subsequently published an initial proxy statement ("Initial Proxy") on May 5, 2015, which included summaries of financial projections prepared in

March 2015; it subsequently published a final proxy statement ("Final Proxy") on October 13, 2015 that included the same projections. *Id.* ¶¶ 8–9, 11, 17, 104, 131. Shareholders approved the merger on November 18, 2015. *Id.* ¶¶ 22, 144. Under the merger agreement, Shanda stockholders received $3.55 per share and Shanda ADS owners received $7.10 per ADS. *Id.* ¶¶ 144–45. A few dissenting shareholders exercised their appraisal rights and brought suit against Defendant Shanda, seeking the Grand Court of the Cayman Islands' determination of the fair value of its shares. *Id.* ¶¶ 22–23, 151. The Grand Court of the Cayman Islands awarded the dissenters $16.68 per ADS. *Id.* ¶ 25. This award was partially reversed by the Court of Appeal of the Cayman Islands that determined the fair value of the shares were $12.84 per ADS. *Id.*

## II. Alleged Misrepresentations and Omissions in the Proxies

Plaintiff alleges that the Proxies contained materially false and misleading statements that induced him, and others similarly situated, to sell his Shanda shares at artificially deflated prices and to refrain from exercising his appraisal rights. Specifically, Plaintiff claims the Proxies included: faulty and misleading financial projections; misrepresentations about the financial projections; omissions from Shanda's disclosures; and false assurances about the fair value of Shanda's shares.

### A. Projections – Figures and Preparation

First, Plaintiff alleges Shanda utilized false revenue intensity figures, false amortization and depreciation figures and false Mir II Mobile Revenue figures. Second, Plaintiff alleges statements such as the following were misleading:

> In compiling the projections, the Company's management took into account historical performance of legacy games, projected launch dates of new games in the Company's pipeline, and projected revenues for each new game, combined with estimates regarding gross margin, operating expenses, tax rates, capital expenditure, EBITDA and net income. Although the projections are presented with numerical specificity, they were

2

based on numerous assumptions and estimates as to future events made by management that management believed were reasonable at the time the projections were prepared. *Id.* ¶ 191. In short, Plaintiff contends these statements were misleading because the figures relied upon to create the projections contained errors and unreasonable assumptions; therefore, Plaintiff argues it cannot be said that the projections were based on best estimates or that they were reasonably prepared. *See Id.* ¶ 177(b)-(c).

### B.   Scope of Projections

Plaintiff alleges that the Proxies falsely stated that they included a summary of the projections. For example, the Initial Proxy states "[t]he following table summarizes the financial projections provided by management to the Buyer Group and the [financial advisor] in March 2015. . ." and that this was provided "to give shareholders access to certain information that was made available to the financial advisor. . ." *Id.* ¶ 196. Plaintiff primarily alleges statements such as the above were false because the projections included in the Proxies omitted a full year of data. *Id.* ¶ 177.

### C.   Omission of Mir II Mobile Success from Final Proxy

On August 3, 2015, Defendant Shanda launched Mir II Mobile, an RPG mobile game that it had spent over two years researching and developing. *Id.* ¶ 76. Shortly thereafter, on August 14, 2015, Shanda made a social media post and posted an article on its website celebrating the game's success. *Id.* Plaintiff alleges the omission of Mir II Mobile's performance from the Final Proxy, which was published on November 18, 2015, was misleading because Defendant Shanda knew that the game had generated more revenue than what was estimated in the projections. *Id.* ¶ 137. Furthermore, Plaintiff claims the omission misled shareholders into believing the projections in the Final Proxy statement included reasonable assumptions about Mir II Mobile and the known success of the game. *Id.* ¶ 177.

3

### D. Fairness of the Transaction

Plaintiff alleges the press release announcing the merger and the Proxies included false and misleading statements characterizing the transaction as fair. For example, the Initial Proxy stated:

> At a meeting on April 3, 2015, the Board, acting upon the unanimous recommendation of the Special Committee, unanimously (a) determined that it was fair to, advisable and in the best interests of the Company and the Unaffiliated Holders to consummate the Transactions, including the Merger . . . and (c) resolved to recommend in favor of the authorization and approval of the Merger Agreement, the Plan of Merger and the consummation of the Transactions, including the Merger, to the shareholders of the Company and directed that the Merger Agreement, the Plan of Merger and the consummation of the Transactions, including the Merger, be submitted to a vote of the shareholders of the Company for authorization and approval.

*Id.* ¶ 201. Similarly, the Final Proxy stated:

> For the foregoing reasons, the Company believes that the Merger Agreement, the Plan of Merger and the Transactions, including the Merger, are fair to, and in the best interests of, the Company and its unaffiliated security holders.

*Id.* ¶ 232. Plaintiff claims statements like the above were false or misleading because they conveyed that the price offered to shareholders in the transaction was fair. *Id.* ¶ 177.

## LEGAL STANDARD

### I. Motion to Dismiss

When deciding a motion to dismiss, the Court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the Court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Claims should be dismissed when a plaintiff has not pleaded enough facts that "plausibly give rise to an entitlement for relief." *Id.* at 679. A claim is plausible "when the plaintiff pleads

4

factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). While not akin to a "probability requirement," the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). Accordingly, where a plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## II. Federal Rules of Civil Procedure 9(b)

Under Rule 8(a) of the Federal Rules of Civil Procedure, pleadings must contain only "a short and plain statement" of the basis for the court's jurisdiction and of the claim showing that the pleader is entitled to relief, and a demand for the relief sought. Fed. R. Civ P. 8(a). However, where, as here, a plaintiff has alleged fraud claims under § 10(b) of the Exchange Act, the complaint is subject to the heightened pleading requirements of Federal Rules of Civil Procedure 9(b) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Rule 9(b) requires that the complaint "state with particularity the circumstances constituting fraud or mistake." To satisfy the particularity requirement, a complaint must "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015).

The PSLRA holds private securities plaintiffs to an even more stringent pleading standard. Under the PSLRA, a plaintiff must "(1) specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading; and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state

5

of mind." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) (internal citation and quotation marks omitted) (quoting 15 U.S.C. § 78u-4(b)). To determine that an inference of scienter is strong, the court must decide whether "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324.

## DISCUSSION

### I. Section 10(b) of the Securities Exchange Act and Rule 10b-5

To state a claim under both Section 10(b) of the Exchange Act and Rule 10b-5, Plaintiff must show: "(i) a material misrepresentation or omission; (ii) scienter; (iii) a connection with the purchase or sale of security; (iv) reliance by the plaintiff(s); (v) economic loss; and (vi) loss causation." *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010). *See also* 15 U.S.C. § 78u–4(b). Here, Defendant Shanda argues that Plaintiff's Amended Complaint should be dismissed against it because the Court lacks jurisdiction under *Morisson* and Plaintiff has failed to state a claim under Section 10(b) and 20(a).

#### A. *Morisson* as a Threshold Issue

In *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), the Supreme Court established § 10(b) of the Securities Exchange Act did not contain congressional expression of extraterritorial effect. *Id.* at 262. Accordingly, the Court determined that § 10(b) only reaches claims involving (1) "transactions in securities listed on domestic exchanges," or (2) "domestic transactions in other securities." *Id.* at 267.

Under prong one of the *Morrison* test, the "transaction[ itself] must occur on a domestic exchange to trigger the application of § 10(b)." *In re Alstom SA Sec. Lit.*, 741 F.Supp.2d 469, 473 (S.D.N.Y. 2010). Pursuant to prong two of the *Morrison* test, § 10(b) applies to domestic transactions in other securities if (1) "irrevocable liability" was incurred in the United States; or

6

(2) "title was transferred within the United States." *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012).

Here, Plaintiff has satisfied prong one under *Morrison*. In fact, this case involves securities that were only traded on NASDAQ, a domestic exchange. The Defendant's argument that Plaintiff simply offers a mere listing theory that was rejected by the Second Circuit in *City of Pontiac Policemen's Sys. V. UBS AG* is unpersuasive. 752 F.3d 173, 180–81 (2nd Cir. 2014). *Pontiac* involved a § 10(b) claim entailing a foreign purchaser, foreign issued shares, and a foreign exchange. Consequently, the Second Circuit held that "*Morrison* does not support the application of § 10(b) of the Exchange Act to claims by a foreign purchaser of foreign-issued shares on a foreign exchange simply because those shares are also listed on a domestic exchange." *Id.* The facts of this case are distinguishable from *Pontiac* considering Defendant Shanda's shares were only listed on a domestic exchange. The Defendant cites no other cases involving securities listed on domestic exchanges that support its proposition that the transaction did not occur on the domestic exchange. Accordingly, the Court finds § 10(b) is applicable.

B.   **Material Misrepresentations or Omissions**

Rule 10b-5 "renders it unlawful to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *Levy v. Maggiore*, 48 F. Supp. 3d 428, 444 (E.D.N.Y. 2014) (citation and internal quotation marks omitted). "A statement is considered materially misleading under § 10(b) when its representations, viewed as a whole, would have misled a reasonable investor." *Id.* (citations and internal quotation marks omitted). It is not sufficient to allege that the investor might have considered the misrepresentation or omission important, nor is it necessary to assert that the investor would have acted differently if

an accurate disclosure was made. *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000). Materiality is a mixed question of law and fact, and accordingly at the motion to dismiss stage "a complaint may not properly be dismissed . . . on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Id.* (citation and internal quotation marks omitted); *see also In re CannaVest Corp. Secs. Litig.*, 307 F. Supp. 3d 222, 237 (S.D.N.Y. 2018) (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 161 (2d Cir. 2000)) ("At the pleading stage, a plaintiff satisfies the material requirement of Rule 10b-5 by alleging a statement or omission that a reasonable investor would have considered significant in making investment decisions.").

   i. *Projections – Figures and Preparation*

  Plaintiff argues that Defendant Shanda made actionable misstatements about its projections that mislead investors into believing the deal was fair. In particular, Plaintiff asserts that the Proxies utilized projections based on false revenue intensity figures, amortization figures, and depreciation figures. As a result, Plaintiff reasons that statements concerning both the factors the Defendants considered in generating the projections and the assurances provided to the financial advisor about the accuracy of the projections were materially false. As a preliminary matter, the Court finds that Plaintiff has satisfied the particularity requirement of the PSLRA, by identifying when, where and by whom statements about the projections were made.

  In the Second Circuit, "statements about a 'company's projections [are treated as] opinions rather than guarantees.'" *In re SunEdison, Inc. Sec. Litig.*, 300 F. Supp. 3d 444, 480 (S.D.N.Y. 2018) (quoting *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 112 (2d Cir. 2011)). Accordingly, the Court must consider the framework set forth in *Omnicare, Inc. v. Laborers*

*Dist. Council Constr. Indus. Pension Fund*, to determine whether Plaintiff has sufficiently pleaded actionable misstatements and omissions concerning the projections. 135 S. Ct. 1318. "Pursuant to the safe harbor, 'a defendant is not liable [for a forward-looking statement] if the forward-looking statement is identified and accompanied by meaningful cautionary language *or* is immaterial *or* the plaintiff fails to prove that it was made with actual knowledge that it was false or misleading.'" *Fresno Cty. Employees' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 548 (S.D.N.Y. 2017) (quoting *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir. 2010)). In *Omnicare*, the Supreme Court established that opinions can be misleading if "(1) 'the speaker d[oes] not hold the belief... professed'; (2) the 'fact[s] [ ] supplied' in support of the belief professed are 'untrue'; or (3) the speaker 'omits information' that 'makes the statement misleading to a reasonable investor.'" *Martin v. Quartermain*, 732 F. App'x 37, 40 (2d Cir. 2018) (quoting *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016).

### a. Revenue Intensity Figures

Plaintiff has not sufficiently pleaded that the revenue intensity figures and related statements about the preparation of the projections were materially false. In fact, Plaintiff has failed to allege any facts to suggest the Defendant Shanda believed the revenue figures were false. Similarly, Plaintiff has failed to demonstrate that there was an unreasonable basis for believing these figures were false or that the Defendant Shanda was aware of undisclosed facts that would undermine the accuracy of the figures. Consequently, the statements about said figures and the preparation of the projections cannot be said to imply the Defendant Shanda had actual knowledge of falsity. *See Oklahoma Firefighters Pension & Ret. Sys. v. Student Loan Corp.*, 951 F. Supp. 2d 479, 497 (S.D.N.Y. 2013). Plaintiff's argument that the Appraisal proceeding concluded that the revenue figure resulted in a 5% decrease in Shanda's revenue

model is unpersuasive. As this District has consistently held, fraud-by-hindsight cannot support a 10(b) claim. *See Kocourek v. Shrader*, No. 09CV10163LAKFM, 2019 WL 2450910, at *14 (S.D.N.Y. June 12, 2019); *Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 690 (S.D.N.Y. 2012), *aff'd*, 548 F. App'x 16 (2d Cir. 2013).

### b. Amortization and Depreciation Figures

Viewing the evidence in the light most favorable to Plaintiff, the Court finds Plaintiff has sufficiently pleaded material falsity regarding the amortization and depreciation figures and, by extension, related statements about the preparation of the projections. As Plaintiff alleges, the Defendant Shanda's depreciation and amortization models violated basic accounting principles and contradicted the Defendant Shanda's previous approach to modeling these figures. Therefore, Plaintiff has sufficiently alleged that the amortization and depreciation figures underlying the aforementioned statements were untrue and Defendant Shanda did not have "a reasonable basis for [said] belief[s]." *Slayton v. American Express Co.* 604 F.3d 758, 774 (2d Cir. 2010) (internal quotation marks omitted). Lastly, the Court cannot conclude that statements about projections were "unimportant to a reasonable investor," and hence, at this early pleading stage, Plaintiff has sufficiently alleged they were material. *See Ganino*, 228 F.3d at 162.

### c. False Mir II Mobile's Revenue Figures

Plaintiff has not sufficiently pleaded that the Mir II Mobile revenue figures or related statements about the preparation of the projections were materially false. In particular, Plaintiff has failed to demonstrate that the Defendant had actual knowledge that the figures were false or misleading. Instead, Plaintiff simply makes conclusory statements regarding Shanda's expectations and again argues a theory of fraud by hindsight. The only more specific support Plaintiff utilizes is that the figures contradicted Shanda's expectation of Mir II Mobile's success

10

based on pre-orders and other data. Without more detail the Court cannot conclude that Shanda did not believe the figures were accurate or were unreasonable in believing the figures were accurate. *See Oklahoma Firefighters Pension*, 951 F. Supp. 2d at 497.

    *ii.    Scope of Projections*

Plaintiff argues it was materially false to state the Proxies included a summary of the projections.[1] In particular, Plaintiff asserts the projections' 2020 data was not a detail or formality, but instead was substantive information. The Court concludes that Plaintiff has sufficiently pleaded that the characterization of the 2020 data is actionable for the following reasons. First, Plaintiff has satisfied the particularity requirements of the PLSRA. Second, Plaintiff has demonstrated that the statement was misleading. Although a summary by its very definition need not recount every detail, Plaintiff is correct in articulating that it must describe, "the main points succinctly." Summary, Pocket Oxford English Dictionary (2d ed. 2008). Where, as here, a chart summarizes a data set, it is misleading to omit the last period from the chart summary. This is especially true in light of the fact that the projections for 2020 showed a change in growth. Lastly, similar to the above, the Court cannot conclude that a statement characterizing a summary of projections is "unimportant to a reasonable investor." For example, had the Proxies indicated they included primary points from a portion of the projections, a reasonable investor might be inclined to give these statements less weight. Hence, at this early pleading stage, Plaintiff has sufficiently alleged it was material. *See Ganino*, 228 F.3d at 162.

---

[1] Specifically, Plaintiff states "[i]t was false to say that the Proxies summarized the Projections, because what they omitted was not detail or formality but an entire year of data." Pl. Opp. Br. at 9. As a result, Plaintiff's argument relies on characterizing this claim as a misrepresentation or misstatement, as opposed to an omission. Plaintiff does not plead with particularity why omitting the 2020 data in it of itself would have been misleading, nor does he allege that Shanda had a duty to disclose this data. Accordingly, the Court will not address whether separate and apart from the characterization of the projections, the exclusion of the 2020 data from the Proxies constituted an omission under 10(b).

11

### iii. *Omission of Mir-Mobile II Success from Final Proxy*

Plaintiff argues that the omission of known Mir II Mobile data from the projections is actionable. More specifically, Plaintiff asserts that because Defendant Shanda already knew of Mir II Mobile's success at the time it issued its Final Proxy, it must have known that failing to account for Mir II Mobile's known success in the Final Proxy's projections rendered said projections false. Plaintiff further argues that fairness statements included in the Final Proxy implied that the projections had accounted for the success of the game.

The Court finds that Plaintiff has not sufficiently pleaded that the omission of Mir-Mobile's Success from the Final Proxy was materially false. At the first step, Plaintiff's claim satisfies the PSLRA's pleading requirement. However, Plaintiff has failed to demonstrate that the omission was misleading. As the Defendants argue, the Final Proxy explicitly states the projections were prepared during the first quarter of 2015, which was before Mir-Mobile II was released. *See* Def. Ex. 2, at 18, ECF No. 42-2. Furthermore, the Initial Proxy and Final Proxy included the same projections. *See Id.*; Def. Ex. 1, at 13–14, ECF No. 42-1. When coupled together, these two facts suggest that any reasonable investor would have known the Projections did not account for Mir II Mobile's known success.

### iv. *Fairness of the transaction*

Plaintiff argues that the Defendant Shanda was required to opine on the quality of the transaction. Furthermore, Plaintiff asserts that once the Defendant Shanda called the deal fair, it was required to speak truthfully about the transaction. Plaintiff contends the Defendant Shanda's fairness statements were about the deal price, but to the extent these statements concerned process, they left investors with the impression that the price was fair.

The Court finds that the Defendant Shanda's fairness statements constitute inactionable opinion statements. Though the Plaintiff's Amended Complaint satisfies the particularity requirement of the PSLRA, it does not allege facts that indicate that the Defendant Shanda believed the deal was not fair. Further, the Amended Complaint does not allege that the facts supporting the belief that the deal was fair are untrue—this is true even if the projections were faulty—or that the Defendant Shanda omitted information that would make fairness statements about the deal misleading. Plaintiff's argument that because the appraisal price of $9.56 was higher than the deal price of $7.10, the Defendant could not have believed $7.10 was fair is unpersuasive. As stated above, fraud-by-hindsight cannot support a 10(b) claim. *See Kocourek*, 2019 WL 2450910, at *14.

## C. Scienter

Under the PSLRA, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). "The requisite state of mind in a Rule 10b-5 action is 'an intent to deceive, manipulate or defraud.'" *Ganino*, 228 F.3d at 168 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 (1976)). To satisfy the PSLRA's pleading requirements for scienter, a plaintiff must allege facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns*, 493 F.3d at 99. Plaintiff attempts to proceed under both theories here.

In evaluating whether either of these showings has been made, the court may consider, among other things, whether the plaintiff has alleged that the defendant "(1) benefitted in a concrete and personal way from the purported fraud; (2) engaged in deliberately illegal behavior; (3) knew facts or had access to information suggesting that their public statements were not

accurate; or (4) failed to check information they had a duty to monitor." *Novak v. Kasaks*, 216 F.3d 300, 311 (2d Cir. 2000) (internal cross references omitted). When examining these factors, a court must be mindful that the inquiry is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs*, 551 U.S. at 322-23.

Here, Plaintiff has sufficiently alleged that Defendant Shanda had motive and opportunity to commit fraud. In particular, Plaintiff has demonstrated that Defendants Zhang and Liang, as members of Buyer Group, had the motive and opportunity to secure a low transaction price and that their scienter can be imputed to Defendant Shanda. Generally, courts in this District have held that "'management level' employees can serve as proxies for the corporation in suits filed under the Exchange Act." *Thomas v. Shiloh Indus., Inc.*, No. 15 CV 7449 (KMW), 2017 WL 2937620, at *3 (S.D.N.Y. July 7, 2017). Although courts have "not developed a bright-line rule to determine when an executive is sufficiently senior such that his or her scienter can be attributed to the entity[,] . . . courts typically consider the individual's relative seniority at the issuing entity and the connection between the executive's role and the fraudulent statements." *Barrett v. PJT Partners Inc.*, No. 16-CV-2841 (VEC), 2017 WL 3995606, at *7 (S.D.N.Y. Sept. 8, 2017). In this case, during the relevant class period, Defendants Zhang and Liang were Shanda's CEO and the Director of the Board, respectively and both individuals were a part of the Buyer Group. Based on Defendants Zhang's and Liang's seniority at the company, their respective responsibilities and their role as buyers, the Court concludes that Defendants Zhang and Liang were management level employees. *See Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 276 (S.D.N.Y. 2013). Therefore, their scienter can be imputed to Defendant Shanda.

14

Defendant Shanda's argument that the adverse-interest doctrine applies is unpersuasive. As the case cited by the Defendant indicates, the adverse interest exception is a "narrow exception that applies only 'where the fraud is committed *against* a corporation rather than on its behalf.'" *Barrett*, No. 16-CV-2841 (VEC), 2017 WL 3995606, at *8 (S.D.N.Y. Sept. 8, 2017) (quoting *In re Bernard L. Madoff Inv. Sec. LLC*, 721 F.3d 54, 64 (2d Cir. 2013). Where, as here, "a corporation benefits to *any* extent from the fraudulent acts of its agents, the agents cannot be said to have 'totally abandoned' the interests of the corporation." *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 382–83 (S.D.N.Y. 2015) (citations omitted). Accordingly, because Plaintiff plausibly alleges that the omissions and misstatements caused the transaction price to be lower than the actual value of the company, the adverse interest-doctrine does not apply. In other words, the Buyer Group benefited from having to purchase shares at a cheaper price.

**D.    Reliance**

"The reliance and loss causation elements of a securities fraud claim are analogous to but-for and proximate causation, respectively." *GAMCO Investors, Inc. v. Vivendi, S.A.*, 917 F. Supp. 2d 246, 251 (S.D.N.Y. 2013) (citing *ATSI Commc'ns.*, 493 F.3d at 106). To prove reliance, "the plaintiff must show that but for the material misleading statement or omission, he would not have transacted in the security." *Id.* "The traditional (and most direct) way a plaintiff can demonstrate reliance is by showing that he was aware of a company's statement and engaged in a relevant transaction—e.g., purchasing common stock—based on that specific misrepresentation." *Id.* (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, (2011)). Additionally, the plaintiff must show that his reliance was reasonable. *Id.* (citing *Starr ex rel. Estate of Sampson v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109–10 (2d Cir. 2005)).

15

As stated above, Plaintiff has sufficiently pleaded that the Defendant Shanda made materially false statements about estimates relied on in creating the projections (specifically as it relates to amortization and depreciation figures) and the summary of the projections. Plaintiff does not allege that he relied on the materially misleading statements. Instead, Plaintiff argues that reliance can be presumed based on the fraud on the market doctrine.[2] Pursuant to this theory,

> "the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations." Because the market "transmits information to the investor in the processed form of a market price," we can assume, the Court explained, that an investor relies on public misstatements whenever he "buys or sells stock at the price set by the market."

*Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809–13 (2011)(quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 243–46 (1988).

To plead a reliance based on the presumption created by the fraud on the market theory, a Plaintiff "first must allege that the relevant market was open and developed or, in other words, efficient." *In re Parmalat Sec. Litig.*, 375 F.Supp.2d 278, 303 (S.D.N.Y.2005). While the Second Circuit has

> "declined to adopt a particular test for market efficiency[,] . . . district courts in this and other Circuits regularly consider . . . [the following factors:] (1) the average weekly trading volume of the [stock], (2) the number of securities analysts following and reporting on [it], (3) the extent to which market makers traded in the [stock], (4) the issuer's eligibility to file an SEC registration Form S–3, and (5) the demonstration of a cause and effect relationship between unexpected, material disclosures and changes in the [stock's] price[ ].

*Waggoner v. Barclays PLC*, 875 F.3d 79, 94 (2d Cir. 2017), *cert. denied,* 138 S. Ct. 1702 (2018) (internal quotations and citations omitted). "[T]he federal courts are unanimous in their

---

[2] Because the Court finds that Plaintiff has only sufficiently alleged materially false misstatements, the Court need not address the Parties' arguments concerning reliance based on the *Affiliated Ute* presumption, which applies only to omissions. *See In re Facebook, Inc.*, 986 F. Supp. 2d 428, 469 (S.D.N.Y. 2013) (internal citations and quotation marks omitted) ("[r]eliance is presumed in securities actions involving primarily a failure to disclose, and may be presumed where plaintiffs plead an omission of a material fact by one with a duty to disclose.").

16

agreement that a listing on the NASDAQ or a similar national market is a good indicator of efficiency." *In re Initial Pub. Offering Sec. Litig.*, 544 F.Supp.2d 277, 296 n. 133 (S.D.N.Y.2008); *Dodona I, LLC v. Goldman, Sachs & Co.,* 847 F.Supp.2d 624, 650–51 (S.D.N.Y.2012). By contrast, IPOs and private transaction are generally treated as inefficient. *See In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006), *decision clarified on denial of reh'g sub nom. In re Initial Pub. Offering Sec. Litig.*, 483 F.3d 70 (2d Cir. 2007) ("the market for IPO shares is not efficient"); *Sable v. Southmark/Envicon Capital Corp.*, 819 F. Supp. 324, 339 (S.D.N.Y. 1993) ("there is no such justification for a presumption of reliance here, because the partnerships were offered privately and were not traded actively in a large public market."). Here, neither party identified any case law that is directly on point. However, in light of the factors typically considered in determining whether a market is efficient, the Court concludes that the forced sale of shares through a merger does not constitute an efficient market. This is because the share price was negotiated as opposed to being driven by trading volume or external analysis or reporting.

### III.   Count II: Section 20(a) of the Securities Exchange Act

Under Section 20(a), to plead a prima facie case of control person liability, Plaintiff must allege: "(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *Schwab*, 285 F. Supp. 3d at 758. (internal citations omitted). However, "[b]ecause the Plaintiff[] ha[s] failed to state a primary violation under Section 10(b), [he] cannot establish control person liability under Section 20(a)." *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 379 (S.D.N.Y. 2011)

## CONCLUSION

Accordingly, Defendant Shanda's motion to dismiss is **GRANTED.**

**SO ORDERED.**

Dated: September 30, 2019

New York, New York

*/s/ Andrew L. Carter, Jr.*

**ANDREW L. CARTER, JR.**

**United States District Judge**