**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SHANDA GAMES LIMITED SECURITIES LITIGATION | Case No. 1:18-CV-02463 (ALC) |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR RECONSIDERATION UNDER S.D.N.Y. LOCAL CIVIL RULE 6.3 OR, ALTERNATIVELY, FOR A PRE-MOTION CONFERENCE TO SEEK LEAVE TO FILE A SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... ii

TABLE OF DEFINED TERMS ............................................................................... vi

I.   PRELIMINARY STATEMENT AND STANDARD OF REVIEW ..................................... 1

II.  RECONSIDERATION OF THE 20A CLAIM IN COUNT II IS APPROPRIATE ............... 2

    A.   Plaintiff Pleads an Exchange Act Violation .................................................. 2

    B.   Reliance is Not Required to Plead a 20A Claim ............................................ 3

    C.   Shanda Traded While Possessing Material Nonpublic Information and
        Plaintiff Traded Contemporaneously with Shanda .......................................... 5

III. RECONSIDERATION OF THE COURT'S RELIANCE FINDING IS APPROPRIATE .... 8

    A.   The Order Overlooked Controlling Precedent Regarding the Breadth of the
        Fraud on the Market Presumption .................................................................. 8

    B.   The Order Overlooked Controlling Precedent Finding that Fraud on the
        Market Applies Even to Negotiated and Off-Exchange Transactions .......................... 10

IV.  RECONSIDERATION OF PLAINTIFF'S ALLEGATION OF THE OMISSION
    REGARDING MIR II MOBILE'S TREMENDOUS SUCCESS IS APPROPRIATE ....... 15

    A.   The Order Did Not Address Plaintiff's Allegation of Shanda's Pure Omission ........... 15

    B.   Plaintiff's Allegation of Shanda's Pure Omission is Actionable ................................. 15

V.   CONCLUSION AND REQUEST IN THE ALTERNATIVE ............................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adobe Sys., Inc. Sec. Litig.*,
   139 F.R.D. 150 (N.D. Cal. 1991) ........................................................................13

*Affiliated Ute Citizens of Utah v. United States*,
   406 U.S. 128 (1972) ............................................................................................17

*Alki Partners, L.P. v. Vatas Holding GmbH*,
   769 F. Supp. 2d 478 (S.D.N.Y. 2011) .................................................................14

*Ark. Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*,
   879 F.3d 474 (2d Cir. 2018) ........................................................................8, 9, 12

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) .....................................................................................8, 10, 14

*Black v. Finantra Capital, Inc.*,
   418 F.3d 203 (2d Cir. 2005) .......................................................................11, 12, 14

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
   763 F. Supp. 2d 423 (S.D.N.Y. 2011) ...................................................................3

*Chavin v. McKelvey*,
   25 F. Supp. 2d 231 (S.D.N.Y. 1998) ...................................................................14

*Davis v. Scottish Re Group. Ltd.*,
   159 A.D.3d 528 (N.Y. App. Div. 2018) ...............................................................16

*Deutschman v. Beneficial Corp.*,
   132 F.R.D. 359 (D. Del. 1990) ...........................................................................13

*Dole Food Co. v. Patrickson*,
   538 U.S. 468 (2003) ..............................................................................................5

*In re Ephedra Prod. Liab. Litig.*,
   478 F. Supp. 2d 624 (S.D.N.Y. 2007) ...................................................................7

*Fogarazzo v. Lehman Bros., Inc.*,
   232 F.R.D. 176 (S.D.N.Y. 2005) .........................................................................17

*In re Forcefield Energy Inc. Sec. Litig.*,
   No. 15 CIV. 3020 (NRB), 2015 WL 4476345 (S.D.N.Y. July 22, 2015) ........12, 14

*Ganino v. Citizens Utils. Co.*,
  228 F.3d 154 (2d Cir. 2000)........................................................................ 15-16

*Green v. Hamilton Int'l Corp.*,
  437 F. Supp. 723 (S.D.N.Y. 1977)..............................................................7, 16

*Gruber v. Gilbertson*,
  No. 16-CV-9727, 2019 WL 4458956 (S.D.N.Y. Sept. 17, 2019)............................3

*Hoexter v. Simmons*,
  140 F.R.D. 416 (D. Ariz. 1991) ......................................................................13

*Hyatt Corp. v. Stanton*,
  945 F. Supp. 675 (S.D.N.Y. 1996).....................................................................5

*In re Initial Pub. Offerings Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006)..................................................................9, 11, 14

*Jablonski v. Special Counsel, Inc.*,
  No. 1:16-CV-05243 (ALC), 2018 WL 3979591 (S.D.N.Y. Aug. 20, 2018) ............................1

*Johnson v. Aljian*,
  490 F.3d 778 (9th Cir. 2007) ............................................................................4

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  40 F. Supp. 3d 332 (S.D.N.Y. 2014).................................................................4

*Larson v. Domestic & Foreign Commerce Corp.*,
  337 U.S. 682 (1949).........................................................................................7

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011)..........................................................................................15

*McIntire v. China MediaExpress Holdings, Inc.*,
  38 F. Supp. 3d 415 (S.D.N.Y. 2014)..............................................................13, 14

*Moskowitz v. Lopp*,
  128 F.R.D. 624 (E.D. Pa. 1989) .....................................................................13

*In re Openwave Sys. Sec. Litig.*,
  528 F. Supp. 2d 236 (S.D.N.Y. 2007)...............................................................3

*In re Oxford Health Plans, Inc. Sec. Lit.*,
  199 F.R.D. 119 (S.D.N.Y. 2001) ...................................................................13

*In re Parmalat Sec. Litig.*,
  376 F. Supp. 2d 472 (S.D.N.Y. 2005).................................................................9

*Pasternack v. Shrader*,
    863 F.3d 162 (2d Cir. 2017)................................................................................18

*In re Petrobras Sec.*,
    862 F.3d 250 (2d Cir. 2017)...........................................................................13, 14

*In re Priceline.com Inc.*,
    236 F.R.D. 89 (D. Conn. 2006)........................................................................13

*Sable v. Southmark/Envicon Capital Corp.*,
    819 F. Supp. 324 (S.D.N.Y. 1993).................................................................11, 14

*Sawant v. Ramsey*,
    570 F. Supp. 2d 336 (D. Conn. 2008)................................................................3

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
    571 F. Supp. 2d 1315 (N.D. Ga. 2007).............................................................13

*SEC v. Contrarian Press, LLC*,
    No. 16-cv-6964 (VSB), 2019 WL 1172268 (S.D.N.Y. Mar. 13, 2019) ...............................2, 4

*SEC v. Morgan Keegan & Co.*,
    678 F.3d 1233 (11th Cir. 2012) .......................................................................4

*SEC v. North Am. Research & Dev. Corp.*,
    424 F.2d 63 (2d Cir. 1970)..............................................................................4

*Simon DeBartolo Grp. v. Richard E. Jacobs Grp.*,
    186 F.3d 157 (2d Cir. 1999)............................................................................17

*In re Smith Barney Transfer Agent Litig.*,
    290 F.R.D. 42 (S.D.N.Y. 2013) .......................................................................17

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008)..............................................................2

*In re Time Warner Inc. Sec. Litig.*,
    9 F.3d 259 (2d Cir. 1993) ...............................................................................16

*Tolan v. Computervision Corp.*,
    696 F.Supp. 771 (D. Mass.1988) ....................................................................13

*United States v. Maria*,
    186 F.3d 65 (2d Cir. 1999)..............................................................................4

*Vine v. Beneficial Fin. Co.*,
    374 F.2d 627 (2d Cir. 1967)..........................................................................6, 7

**Statutes**

15 U.S.C. § 78t(a) ....................................................................................................4

15 U.S.C. § 78t–1(a) ...............................................................................................2

**Other Authorities**

Fed. R. Civ. P. 15 ..................................................................................................18

FLETCHER CYC. CORP. §29 (2019) ...........................................................................5

MATTHEW BENDER, INSIDER TRADING § 4.07 (2013) ................................................3

Shah, Neil V., *Section 20A and the Struggle for Coherence, Meaning, and
    Fundamental Fairness in the Express Right of Action for Contemporaneous
    Insider Trading Liability*, 61 RUTGERS L. REV. 791, 812 (Spring 2009) ..................3

## TABLE OF DEFINED TERMS

The following table lists the defined terms used throughout this brief.

| Term | Definition |
| --- | --- |
| "ADS" | American Depositary Shares |
| "Amended Complaint" or "AC" | Lead Plaintiff's Class Action Complaint for Violations of the Federal Securities Laws (ECF No. 25) |
| "Buyer Group" | The persons and entities that acquired ultimate control of Shanda through the going private merger transaction |
| "Exchange Act" | The Securities Exchange Act of 1934 |
| "Final Proxy" | The proxy statement filed by Shanda on Form Schedule 13E3/A on October 13, 2015 |
| "Plaintiff" | Lead Plaintiff David Monk |
| "Motion to Dismiss" or "MtD" | Memorandum of Law in Support of Shanda Games Limited's Motion to Dismiss (ECF No. 41) |
| "Opposition" or "Opp." | Lead Plaintiff's Opposition to Defendant's Motion to Dismiss (ECF No. 44) |
| "Order" | The September 30, 2019, Order dismissing the Amended Complaint (ECF No. 57) |
| "Reply" | Reply Memorandum of Law in Further Support of Shanda Games Limited's Motion to Dismiss (ECF No. 52) |
| "SEC" | The United States Securities and Exchange Commission |
| "Shanda" | Defendant Shanda Games Limited, now known as Shengqu Games Limited (ECF No. 48) |
| "Sur-Reply" | Lead Plaintiff's Sur-Reply to Defendant Shanda's Reply in Support of Its Motion to Dismiss (ECF No. 56) |
| "20A" | Section 20A of the Securities Exchange Act of 1934 (alleged in Count II, of Amended Complaint, ECF 25 ¶¶300-312) |
| "§10(b)" | Section 10(b) of the Securities Exchange Act of 1934 (alleged in Count I, of Amended Complaint, ECF 25 ¶¶309–308) |
| "§20(a)" | Section 20(a) of the Securities Exchange Act of 1934 (alleged in Count III, of Amended Complaint, ECF 25 ¶¶313–321) |

Lead Plaintiff David Monk ("Plaintiff") respectfully moves the Court to reconsider the September 30, 2019, Order dismissing the Amended Complaint. ECF No. 57 (the "Order"). This motion assumes familiarity with the facts. *See generally* Opp. at 1–3; Order at 1–4.

## I.   PRELIMINARY STATEMENT AND STANDARD OF REVIEW

While motions for reconsideration should be employed "sparingly," this Court has recognized that they are an appropriate exercise of discretion where there has been a "clear error" or to "prevent manifest injustice." *Jablonski v. Special Counsel, Inc.*, No. 1:16-CV-05243 (ALC), 2018 WL 3979591, at *2 (S.D.N.Y. Aug. 20, 2018) (J. Carter) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013)). Plaintiff respectfully requests that the Court reconsider three aspects of the Order:

**First**, the Order did not address Count II of the Amended Complaint, which asserts a claim for insider trading under § 20A of the Exchange Act ("20A"). Reconsideration is appropriate because the Order did not address this count. Given that the Court found falsity and scienter, and based on Plaintiff's other allegations, Plaintiff has sufficiently pled a 20A claim. The Order's dismissal of Plaintiff's §10(b) claim on the basis of reliance is not dispositive of the 20A claims, because the 20A claims do not require reliance in order to be sustained.

**Second**, reconsideration of Plaintiff's fraud on the market presumption of reliance is appropriate because the Order contravenes controlling precedent. Such precedent was not addressed by the Order and was cited in Plaintiff's Opposition. Plaintiff's argument is unchanged from that set forth in the Opposition and, therefore, this is not an attempt to present the case under new theories, but instead an attempt to respectfully resolve a clear error. *See Jablonski*, 2018 WL 3979591, at *2.

**Third**, reconsideration of Shanda's pure omission regarding Mir II Mobile's tremendous success is appropriate because the Order did not address this allegation, and it is actionable

1

regardless of the Court's holding as to the fraud on the market presumption of reliance.  The

Order addressed the issue of Mir II Mobile's tremendous success when analyzing whether the

Final Proxy discussed misleading projections, but did not address the Amended Complaint's

allegation that Shanda is liable for violating its affirmative duties to disclose this information.

## II.      RECONSIDERATION OF THE 20A CLAIM IN COUNT II IS APPROPRIATE

The Order did not address Count II, which alleges insider trading by Shanda.  To plead a

20A claim, a plaintiff must allege an Exchange Act violation and that defendant had material

nonpublic information while defendant traded contemporaneously with plaintiff.  *See* 15 U.S.C.

§ 78t–1(a); *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 309 (S.D.N.Y. 2008).

Section II(A) below, explains that Plaintiff has adequately pled each element of a §10(b)

violation.  Section II(B) below, explains that alleging a §10(b) ***violation*** does not require a

showing of "reliance."  Section II(C) below, explains that the remaining elements of a 20A cause

of action were also adequately pled by the Amended Complaint.

### A.       Plaintiff Pleads an Exchange Act Violation

A defendant violates §10(b) by (a) making a material misstatement or omission, (b) with

scienter, (c) in connection with the purchase or sale of securities.  *SEC v. Contrarian Press, LLC*,

No. 16-cv-6964 (VSB), 2019 WL 1172268, at *4 (S.D.N.Y. Mar. 13, 2019).  Based on the

findings of the Order, it is clear Plaintiff pled §10(b) violations.

**(a).**  Plaintiff alleged several materially false statement and omissions (AC ¶¶177–242)

and the Order found that two of these allegations were adequately pled.  Order at 10–11.  First,

the Order found that Plaintiff pled material falsity regarding the projections in Shanda's proxies

due to the use of false amortization and depreciation numbers.  Order at 10.  Second, the Order

found that the AC adequately alleged that Shanda made misstatements about these projections

because they omitted an entire year of positive data from its projections.  Order at 11.

**(b).** Plaintiff alleged Shanda's scienter, by pleading that it knew or was reckless in not knowing the true undisclosed facts and had the motive and opportunity to defraud. AC ¶¶251–77. The Order found Shanda's scienter based on its motive and opportunity. Order at 13–15.

**(c).** These misstatements occurred in connection with the purchase or sale of Shanda's securities. *See* AC ¶31; *see supra* Sections II(B)(2) (alleging Shanda purchased securities).

### B.    Reliance is Not Required to Plead a 20A Claim

The Order held that Plaintiff failed to plead the "reliance" element of his §10(b) claim in Count I (securities fraud), and thus may have determined this mooted the need to consider the 20A insider trading claim. However, by passing 20A, Congress "eliminated any requirement for contemporaneous traders to demonstrate reliance." MATTHEW BENDER, INSIDER TRADING § 4.07 (2013);[1] *see In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 763 F. Supp. 2d 423, 508 (S.D.N.Y. 2011) (finding 20A claim without requiring reliance); *Sawant v. Ramsey*, 570 F. Supp. 2d 336, 347 (D. Conn. 2008) (same); *In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 255–56 (S.D.N.Y. 2007) (same).

So, even if the Court rejects Plaintiff's allegations of reliance (*see* Section III), the 20A claim should still be sustained. The 20A claim requires Plaintiff plead a §10(b) ***violation*** by Defendants, but it does not require him to plead a §10(b) ***cause of action***. This distinction is well-established: "[T]here is no case law expressly requiring the pleading of a § 10(b) ***claim*** to assert a § 20A claim. Rather, § 20A merely requires that an underlying ***violation*** of § 10(b) occurred. . . . Therefore, a plaintiff may state a § 20A claim without pleading a § 10(b) claim." *Gruber v. Gilbertson*, No. 16-CV-9727, 2019 WL 4458956, at *3 (S.D.N.Y. Sept. 17, 2019).

---

[1] In a sense, 20A's contemporaneous trading requirement takes the place of the reliance element found in §10(b) claims. *See* Shah, Neil V., *Section 20A and the Struggle for Coherence, Meaning, and Fundamental Fairness in the Express Right of Action for Contemporaneous Insider Trading Liability*, 61 RUTGERS L. REV. 791, 812 (Spring 2009).

That reliance is not an element of §10(b) violations is demonstrated the lack of a reliance element in SEC suits prosecuting §10(b) **violations**.  *E.g.*, *Contrarian Press, LLC*, 2019 WL 1172268, at *4 (stating that to plead a §10(b) "violation" the SEC must allege material falsity or omissions, scienter, and a connection to the purchase or sale of securities, but not reliance); *SEC v. North Am. Research & Dev. Corp.*, 424 F.2d 63, 84 (2d Cir. 1970) (similar); *SEC. v. Morgan Keegan & Co.*, 678 F.3d 1233, 1244 (11th Cir. 2012) (the SEC need not prove reliance because "'reliance' does not bear on . . . whether the securities laws were violated.").[2]

This court has held that, to state a 20A claim "a plaintiff need only allege **_conduct that violates_** the Exchange Act."  *Kaplan v. S.A.C. Capital Advisors, L.P.*, 40 F. Supp. 3d 332, 343 (S.D.N.Y. 2014) (J. Marrero).  Again, Plaintiff's reliance is irrelevant to whether **_Shanda's conduct_** violates §10(b).  The *Kaplan* opinion found a 20A claim can be brought even when the predicate §10(b) claim is time barred, because the viability of the §10(b) **claim** is irrelevant to whether a §10(b) **violation** occurred.  *Kaplan* was following the Ninth Circuit's holding that:

> The term "violates" in Section 20A is crucial. . . .  Nowhere do we find in the statute such modifying or restricting terms as "viable," "actionable," or "timely."  Webster's . . . defines the verb "violates" to mean breaking or disregarding the law. . . .  When, for example, someone asks if a person "violated" the speeding law, she is ordinarily understood as inquiring whether that person disregarded the posted speed limit, not whether a timely action commenced or a successful prosecution resulted.

*Johnson v. Aljian*, 490 F.3d 778, 781 (9th Cir. 2007).

The Order's finding that Shanda made false and misleading statements with scienter are sufficient to establish a **violation** of Section 10(b) to sustain the 20A claim.  Order at 10–11.

---

[2] Comparing 20A with §20(a) of the Exchange Act also highlights the difference between a violation and a claim.  Under §20(a) anyone who "controls any person liable" under §10(b) "shall also be liable."  15 U.S.C. § 78t(a).  This requires a primary finding of **liability,** whereas 20A only requires a predicate **violation**.  *See United States v. Maria*, 186 F.3d 65, 71 (2d Cir. 1999) (using different words in the same statutory context suggests different meanings).

**C.** **Shanda Traded While Possessing Material Nonpublic Information and Plaintiff Traded Contemporaneously with Shanda**

Given the materially false statements and omissions sustained by the Order, there can be no doubt that Shanda also possessed material nonpublic information. *See* Order at 10–11; AC ¶289. Shanda possessed accurate information about its amortization and depreciation information, and it knew that its publicly disclosed information reflected figures that were materially false and misleading and at odds with basic accounting rules and its prior approach to calculating these figures. Similarly, Shanda possessed the 2020 data that it omitted from its public disclosures and knew the material fact that the assertions about the projections were false.

Plaintiff adequately pled that Shanda possessed material nonpublic information at all relevant times, including when it purchased Plaintiff's securities. AC ¶288 (alleging Shanda was the purchaser, describing how Shanda was responsible for depositing money with a payment agent, and describing how Shanda's Final Proxy solicited investors); AC ¶¶311–12 (similar).

In the MtD, Shanda tried to argue that it was not Shanda, but the Buyer Group, who "purchased" the securities at issue. MtD at 22. Shanda's deeply flawed argument was that the Buyer Group ***ultimately*** acquired control of Shanda and so they were the "purchasers." *Id.* Plaintiff's Opposition explained that this was irrelevant misdirection, because Shanda purchased the shares and, as a corporate entity, it transacted on its own behalf and in its own name. Opp. at 19 (citing *Hyatt Corp. v. Stanton*, 945 F. Supp. 675, 681 (S.D.N.Y. 1996)); *see also Dole Food Co. v. Patrickson*, 538 U.S. 468, 474–75 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities."); FLETCHER CYC. CORP. §29 (2019) ("The contract of a corporation is the contract of the legal entity and not of the shareholders individually."). The Reply made two potentially responsive arguments.

**First**, relying on the *Vine* case, Shanda argued that the party positioned most similarly to the Buyer Group was considered the "purchaser."  *See* Reply at 8 (citing *Vine v. Beneficial Fin. Co.*, 374 F.2d 627, 634 (2d Cir. 1967)).  This argument misreads *Vine*, which found that the direct purchaser was the survivor of the merger between the target of the acquisition (*i.e.*, Crown in *Vine* and Shanda in this case) and an entity that merged into the target (*i.e.*, Beneficial Finance Company of New York, Inc. in *Vine*[3] and Capitalcorp Ltd. in this case).  *See* Sur-Reply at 1.  The following graphic shows the positions of the relevant parties in both *Vine* and the current case:



*Vine* confirms that the survivor of the merger (here, Shanda), is the "purchaser."  *Vine* does differ slightly from the current case, because there the <u>parent</u> of the survivor of the merger (Beneficial Finance Company, Inc.) was named as a defendant, and the Second Circuit ruled that the parent was "**a** purchaser of plaintiff's stock through its agent and wholly-owned subsidiary Beneficial Finance Company of New York, Inc."  *Id.* at 635 (emphasis added).  Regardless, this holding leaves no doubt that the survivor of the merger was the direct purchaser (even if acting as agent for its parent).

---

[3] *Vine* described the merger of "Crown into Beneficial," which implies that a Beneficial entity was the survivor of the merger, and stated that after the merger "Crown no longer existed," indicating that a Beneficial entity was the survivor of the merger.  *Id.* at 630-31.  *Vine* never defines "Beneficial" and uses the term to describe both entities with Beneficial in their names. However, there is no ambiguity as to which entity was involved in the merger, since it describes the direct purchaser as "Beneficial Finance Company of New York, Inc."  *Id.* at 635.

An agent is liable for its actionable conduct regardless of whether it is acting for its principal. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 686–87 (1949) ("the principle that an agent is liable for his own torts 'is an ancient one'") (internal citations omitted); *In re Ephedra Prod. Liab. Litig.*, 478 F. Supp. 2d 624, 634 (S.D.N.Y. 2007) ("An 'actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority.'") (quoting Restatement (Third) of Agency §7.01). Shanda is the direct purchaser. Thus, in the current case, even if the Buyer Group (as principal) can be considered an (indirect) purchaser, due to the Buyer Group's control over Shanda (as agent), there can be no question that Shanda was the purchaser of Plaintiff's securities and is liable under 20A.

**Second**, Shanda argued in its Reply, ***for the first time***, that the ADS were not "securities" at the time they were purchased, because they had become a "chit" for cash. Reply at 8. Plaintiff conclusively refuted this argument by explaining that the ADS were always securities. *See* Sur-Reply at 1-2. The Sur-Reply also explained that Shanda's argument would directly contravene *Vine,* which necessarily found there to be a purchase of securities. *See id.* Further, Plaintiff explained that Shanda's premise—that a security ceases to be a security when it becomes redeemable for cash—contradicts authority holding that a redemption of matured notes with an issuer is a purchase of securities sufficient to hold the issuer liable for an insider trading violation. *Id.* (citing *Green v. Hamilton Int'l Corp.*, 437 F. Supp. 723, 727 (S.D.N.Y. 1977).

Plaintiff adequately alleged that he traded contemporaneously with Shanda. *E.g.*, AC ¶¶286, 312. Defendants did not challenge this allegation, except as responded to above. Therefore, Plaintiff has clearly established a 20A violation at the pleading stage.

7

### III.   RECONSIDERATION OF THE COURT'S RELIANCE FINDING IS APPROPRIATE

Plaintiff adequately pled reliance on the basis of the fraud on the market theory endorsed by the Supreme Court in *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988).

In finding that Plaintiff did not plead reliance under *Basic*, the Order compared (1) cases which have found that market efficiency is likely where a stock trades on a major exchange with (2) cases holding that "IPOs and private transaction[s] are generally treated as inefficient." Order at 17.  Based on this comparison, the Order held that Plaintiff could not utilize *Basic* because his sale into the merger transaction did not "constitute an efficient market."  Order at 17. But this conclusion overlooks controlling law that was cited by Plaintiff's Opposition.  Opp. at 14–16.  Plaintiff respectfully urges the Court to reconsider the Order in light of the following.

### A.   The Order Overlooked Controlling Precedent Regarding the Breadth of the Fraud on the Market Presumption

The Court held that Plaintiff's sale into the merger did not "constitute[]" an efficient market.  Order at 17.  But this takes too narrow a view of the fraud on the market rule.  Plaintiff need not show that the merger *itself* was an efficient market.  Instead, once Plaintiff alleges the existence of an efficient market (*e.g.*, the ADS on NASDAQ), he is entitled to a presumption that he relied on the market price in deciding whether to sell on the NASDAQ, seek appraisal, or a sell to Shanda through the going private transaction.

The Second Circuit has found that there are two presumptions embedded within the fraud on the market presumption.  Opp. at 15 (quoting *Ark. Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474 (2d Cir. 2018)).  *Goldman* held that there is a presumption:

> [1] that the price of stock traded in an efficient market reflects all public, material information—including misrepresentations—**and** [2] that investors rely on the integrity of the market price when they choose to buy or sell stock.

Opp. at 15 (quoting *Goldman*, 879 F.3d at 478 (emphasis added)).  There has never been any dispute that the market for Shanda's ADS trading over the NASDAQ was efficient at all relevant times.[4]  *Cf.* Order at 17 ("listing on the NASDAQ . . . is a good indicator of efficiency") (quoting *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006) ("*IPO Case*")).  Therefore, Plaintiff is entitled to presumptions that (1) that market price reflected all public, material information, and (2) that Plaintiff relied on the integrity of that market price when choosing whether to sell or not.  *Goldman*, 879 F.3d at 478.

The logic of this second presumption is simple.  Imagine an acquaintance offers to sell you Starbucks stock for $50 per share.  There are many questions you might ask yourself before deciding to commit to that transaction—and one especially likely question is "what is the market price for Starbucks stock on the NASDAQ?"  If that price is $75 a share, you may choose to buy the stock at the $50 per share offer, as it would seem you are getting a good deal (a $25 premium per share).  However, if the market price of Starbucks stock is $25, you would likely reject the offer, as it would seem you are getting a bad deal.  In this example, even though the transaction is private, you would be relying on the market price in making your decision.

The presumption simply instructs courts to presume that investors ask this question and at least partially rely on the answer when considering whether to buy or sell stock.  Respectfully, the Order erred by overlooking *Goldman* and presuming otherwise.  The reasonableness of the presumption remains exactly as cogent and significant, regardless of whether you plan to transact on the exchange or in-person.  *Basic's* description of the rule confirms that it applies to ***all*** investors who have the benefit of considering prices set by an efficient market:

---

[4] The AC alleged this (AC ¶283) and the Motion to Dismiss did not dispute this.  Moreover, market efficiency is a fact question, not a basis to challenge the pleadings.  *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 508 (S.D.N.Y. 2005) (market efficiency is a "question of fact").

> It has been noted that "*it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity*. . . ." Indeed, nearly every court that has considered the proposition has concluded that where materially misleading statements have been disseminated into an impersonal, well-developed market for securities, *the reliance of individual plaintiffs on the integrity of the market price may be presumed*.

*Basic*, 485 U.S. at 246–47 (internal citation omitted).

That fundamental premise of *Basic* is not upended by the context here: The deal offered $7.10 per ADS (AC ¶281).  If the market price for the ADS was $12.00, that clearly would have weighed on Plaintiff's decision to sell his shares into the merger.  Plaintiff chose to sell his shares to Shanda—rather than taking another action, such as seeking appraisal or selling into the open market—*relying on the integrity of the market price, which was lower than the merger price*.  *See* Opp. at 16.  Under the fraud on the market doctrine, he is entitled to a presumption to that effect.  In practical terms, this presumption simply means that it is assumed that he considered the market price of Shanda's ADS when considering his investment decision, *i.e.*, whether to sell his shares into the transaction.  In recognition of the fact that investors will compare the deal price to the market price, Defendants themselves described the deal price as a "premium" over the pre-announcement stock price – a tacit acknowledgment that the market price mattered to an investor in deciding what action to take in this case.  Opp. at 16; AC ¶180.

**B.    The Order Overlooked Controlling Precedent Finding that Fraud on the Market Applies Even to Negotiated and Off-Exchange Transactions**

The Order ultimately concluded that this situation was akin to cases holding that "IPOs and private transaction[s] are generally treated as inefficient."  Order at 17.  But the IPO and private transaction cases the Court cites dealt with situations where the stock did not *also* trade in an efficient market at the time of plaintiff's investment decision.

The first case held that "the market for [Initial Public Offering] shares is not efficient" precisely because an investor could not rely on the prices set by an existing efficient market. *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006) ("*IPO Case*"). Before a stock starts to trade in an initial public offering, there is no stock price to rely upon to decide whether the IPO price is a good deal — as there was here, with the ADS trading on the NASDAQ. The second case dealt with partnership units that "were offered privately and were not traded actively in a large public market" and held that fraud on the market did not apply because of this absence of a public market. *Sable v. Southmark/Envicon Capital Corp.*, 819 F. Supp. 324, 339 (S.D.N.Y. 1993). In other words, these cases are inapposite because they merely dealt with situations where there was ***no efficient market at all***.

In contrast, the Opposition cited a controlling decision that established that negotiated off-exchange transactions may utilize the fraud on the market presumption, where there is an efficient exchange for the investor to consider. In *Black v. Finantra Capital, Inc.*, the Second Circuit held that fraud on the market presumption applies to negotiated off-exchange transactions. Opp. at 15 (citing 418 F.3d 203 (2d Cir. 2005)). A "friend" "personally solicited" Black to "make a direct private purchase of restricted shares" of a publicly traded company. *Id.* at 205–206. Black agreed and signed an agreement to buy the stock at a set price. *Id.* Both the district court and the Second Circuit found that the *Basic* presumption applied because he relied on the market price of the stock when deciding to buy at the negotiated set price. *Id.* at 209.

The remaining details of *Finantra* also emphasize the breadth of the fraud on the market presumption. While the district court held that the presumption applied, it also found (after discovery that included a deposition of Black), that the presumption was rebutted because Black testified that "the market price had not played a key role in his decision to purchase the stock."

*Id.* at 205.  The Second Circuit ***reversed***, finding that this testimony ***only*** raised a question of fact regarding whether the presumption had been rebutted – ***not whether the presumption existed in the first place.***  The Court noted that despite testimony potentially rebutting the presumption, Black's testimony also cautioned against a finding that the presumption was rebutted, since Black stated that he "took market price into account, because, not surprisingly, the current market price was what determined whether he was 'making a good deal.'"  *Id.* at 209–10.  Here too, investors are entitled to a presumption that they took the market price into account when determining whether the price offered by Shanda was a good deal.  Shanda has not tried to rebut this presumption—and if it seeks to do so, it would need to proffer evidence and carry the "burden of persuasion" at a later stage of litigation.  *See Goldman*, 879 F.3d at 478.

Other cases corroborate this point.  In *Forcefield Energy* this court considered claims brought by a plaintiff whose shares were "not purchased on the open market but were obtained at a fixed price in exchange for bond warrants or in lieu of interest payments."  *In re Forcefield Energy Inc. Sec. Litig.*, No. 15 CIV. 3020 (NRB), 2015 WL 4476345, at *2 (S.D.N.Y. July 22, 2015) (J. Buchwald).  The court considered whether this fact could pose any issues in the case— which could potentially challenge the party's adequacy as lead plaintiff—and firmly held:

> [T]he fact that [plaintiff] bought her equity shares through off-market transactions is irrelevant to her fraud-on-the-market theory of reliance.  ***The fraud-on-the-market theory depends on the existence of an efficient market <u>whose price signals may be relied upon to inform an investor's choices</u>***.  Even though [plaintiff] bought equity shares outside the open market through a note exchange program, she plausibly relied on the market's efficient valuation of ForceField equity to determine whether to participate in the note exchange.

*Id.* at *4.  This holding proves two legal conclusions: (1) complex off-exchange transactions may utilize fraud on the market, and (2) fraud on the market is available because even those trading

off-exchange are presumed to rely on market efficiency.  These conclusions are consistent with *Goldman* and *Finantra*, and are contravened by the Order.[5]

The Opposition also explained that this same rule is firmly corroborated by the legion of cases holding that options traders may rely on the fraud on the market presumption—not because they trade "in" the efficient market—but because they rely on the efficient market in the stock underlying the options.  *See* Opp. at 15–16.  For example, in *McIntire v. China MediaExpress Holdings, Inc.*, the court held that "the market for CCME stock was efficient" and that options traders could rely on the *Basic* presumption because the underlying stock traded on an efficient market.  38 F. Supp. 3d 415, 434 (S.D.N.Y. 2014).  The market efficiency analysis in *McIntire* solely considered the underlying stock, not the market that the options traded in.  Options traders look to the price of the underlying stock when deciding to trade, just like Plaintiff looked to the price of Shanda's ADS when deciding to sell.  Other cases confirm that options traders may rely on the fraud on the market presumption despite not trading "in" the efficient market.[6]

---

[5] In *Petrobras,* the Second Circuit again confirmed that private negotiation is no obstacle to the *Basic* presumption.  *In re Petrobras Sec.*, 862 F.3d 250, 258 (2d Cir. 2017).  However, *Petrobras* is distinct from the current case, because it dealt with notes that did not trade on any exchange.  Therefore, in *Petrobras, **unlike the current case***, the court had reason to analyze the efficiency of the off-exchange market.  It found this market to be efficient and allowed the use of *Basic*.  *Id.*

[6] *E.g.*, *In re Priceline.com Inc.*, 236 F.R.D. 89, 99 (D. Conn. 2006) ("Option traders . . . may use the fraud-on-the-market presumption of reliance absent special circumstances compelling a different result.");  *In re Oxford Health Plans, Inc. Sec. Lit.*, 199 F.R.D. 119, 123–24 (S.D.N.Y. 2001) (quoting *Basic* on reliance and holding that options traders were adequate class representatives); *In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1330 (N.D. Ga. 2007) (stating that option sellers rely "on the ***integrity of the price of the <u>underlying stock</u>***") (emphasis added); *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 155 (N.D. Cal. 1991) (options traders may utilize the presumption "since the value of options is directly related to the value of common stock"); *Hoexter v. Simmons*, 140 F.R.D. 416, 421 (D. Ariz. 1991) (similar); *Moskowitz v. Lopp*, 128 F.R.D. 624, 631 (E.D. Pa. 1989) (similar); *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 370 (D. Del. 1990) (similar); *Tolan v. Computervision Corp.*, 696 F.Supp. 771, 779 (D. Mass. 1988) (similar).

The following chart illustrates that *Basic* presumption is allowed if Plaintiff (1) trades on an exchange that constitutes an efficient market, or (2) trades while relying on prices set by an efficient market.  Even treating Plaintiff's sale as privately negotiated and off-exchange, it would qualify under (2).  The presumption is not allowed if (3) there is no efficient market, or (4) the presumption is rebutted by evidence.  This case cannot fit into (3), since the ADS traded on an efficient market and cannot fit into (4) since there is no evidence rebutting the presumption.

| Types of Cases Dealing with the Fraud on the Market Presumption | | |
| --- | --- | --- |
| **Outcome** | **Description of Category** | **Examples** |
| Fraud on the Market Allowed | **(1)** Cases with trades on an efficient exchange | • *Basic*, 485 U.S. 224. |
| | **(2)** Other cases where investor is relying upon publicly traded share price set by efficient market to make his decision | • *Finantra*, 418 F.3d 203 (negotiated off-exchange transaction), **cited** by Opp. at 15. |
| | | • *McIntire*, 38 F. Supp. 3d 415. (options relying on stock price), **cited** by Opp. at 15–16; *see also* footnote [●] *infra*. |
| | | • *Forcefield*, 2015 WL 4476345 (S.D.N.Y. July 22, 2015) (off-exchange note exchange with issuer). |
| | | • *Petrobras Sec.*, 862 F.3d 250 (private debt purchases). |
| Fraud on the Market Disallowed | **(3)** Cases finding that the security did not trade on any efficient market (*e.g.*, because it was not listed on an exchange and did not otherwise trade in an efficient market) | • *Sable*, 819 F. Supp. 324 (no public market for partnership interests), **cited** by Order at 17 |
| | | • *IPO Case*, 471 F.3d 24 (no public market for IPO shares), **cited** by Order at 17. |
| | | • *Chavin v. McKelvey*, 25 F. Supp. 2d 231, 238 (S.D.N.Y. 1998) (no public market for pre-IPO shares), **cited** by MtD at 10. |
| | **(4)** Cases finding an efficient market existed, but that *Basic* was rebutted by evidence. | • *Alki Partners, L.P. v. Vatas Holding GmbH*, 769 F. Supp. 2d 478, 493 (S.D.N.Y. 2011) (doubting market efficiency, but also holding that presumption rebutted where Plaintiff admittedly did not rely on market price), **cited** by MtD at 10. |

In light of the relevant controlling law on the fraud on the market presumption, Plaintiff respectfully requests that the Court reconsider its Order on this point.

IV.   **RECONSIDERATION OF PLAINTIFF'S ALLEGATION OF THE OMISSION REGARDING MIR II MOBILE'S TREMENDOUS SUCCESS IS APPROPRIATE**

A.   **The Order Did Not Address Plaintiff's Allegation of Shanda's Pure Omission**

The Order rejected Plaintiff's allegation that the projections in the Final Proxy were misleading because they were not updated to account for the known success of Mir II Mobile. Order at 12.  However, the Court did not address Plaintiff's allegation that the failure to disclose the known success of Mir II Mobile was itself an actionable pure omission, regardless of whether the Final Proxy contained misleading statements.  Plaintiff has consistently alleged that Shanda had an affirmative and freestanding duty to disclose the tremendous success of Mir II Mobile. *See* AC ¶¶290, 309–312; ECF No. 35 at 2 (pre-MtD letter); Opp. at 20; Sur-Reply at 2–3.  This duty arises from (1) Shanda's Cayman law duty to provide investors with sufficient information about the merger, and (2) the duty to disclose all material non-public information prior to trading.  *Id.*  The MtD did not address these duties.  In its Reply, Shanda recognized these allegations for the first time.  *See* Reply 7–8.  In the Sur-Reply, Plaintiff fully rebutted Shanda's tardy arguments regarding these claims.  The Order erred by overlooking this claim.

B.   **Plaintiff's Allegation of Shanda's Pure Omission is Actionable**

The AC has adequately alleged the elements of a §10(b) claim regarding the alleged omission of Mir II Mobile's tremendous success.  Those elements are: (a) a material omission; (b) scienter (c) reliance; (d) a connection between the falsity and the purchase or sale of securities; and (e) economic loss.  *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011).  Shanda has only ever challenged the first three elements.

**Material Omission.**  As the Order recognized, materiality is a mixed question of fact that only provides a basis to dismiss where "reasonable minds could not differ" that the information is immaterial.  Order at 8 (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir.

2000)).  Here, the omitted information was that Mir II Mobile launched with tremendously high revenue—earning more than $92–$107 million each month after its release and, in its first quarter, generating more profit than Shanda's entire business in Q1–Q3 of 2015.  AC ¶77. Investors were not told this information or any other information reasonably alerting them to this degree of success.  This information would obviously, and dramatically, change any investors' valuation of the company.  There can be little doubt that the information was material and there is no dispute that Shanda knew this information.  *See* AC ¶¶261–267 (alleging knowledge).

However, undisclosed information only constitutes an omission where the Defendant had a duty to disclose that information.  *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993).  Here, beginning with the Amended Complaint and throughout the briefing, Plaintiff has consistently alleged two such duties.

First, under Cayman law, Shanda must provide its shareholders with "sufficient information" to understand the merger, including a "meaningful valuation" of their shares.  *See Davis v. Scottish Re Group. Ltd.*, 159 A.D.3d 528, 529-530 (N.Y. App. Div. 2018); *see also* AC ¶290; ECF No. 35, at 2; Opp. at 16–18; Sur-Reply at 2–3.  Shanda breached this duty by failing to provide this material information to Plaintiff, which information was critical to his evaluation of the merger and valuation of the ADS.

Second, under insider trading law, Shanda had a duty to disclose all material information prior to buying Plaintiff's ADS.  *Green*, 437 F. Supp. at 728 (describing the duty to "disclose or abstain" from trading and holding that duty extends to issuers trading in its own securities); AC ¶290; Opp. at 16–18; Sur-Reply at 2–3.  Shanda breached this duty by failing to disclose the tremendous success of Mir II Mobile prior to trading.  See Section II(C) (explaining that Shanda bought Plaintiff's ADS through the merger transaction).

**Scienter.**  The AC alleges scienter by pleading that Defendants knew of the game's tremendous success (AC ¶¶76(n), 137–143) and Shanda concedes to having this knowledge (MtD at 19).  The Order found that Plaintiff adequately pled scienter by alleging Shanda's motive and opportunity.  Order at 13–15.  Thus, the element of scienter is met.

**Reliance.**  The AC alleges reliance for this pure omission through the presumption provided by *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128 (1972).  *See* AC ¶282; *Simon DeBartolo Grp. v. Richard E. Jacobs Grp.*, 186 F.3d 157, 173 (2d Cir. 1999) (*Ute* applied to insider trading).  The Order rejected *Affiliated Ute*, holding that "[b]ecause the Court finds that Plaintiff has only sufficiently alleged materially false misstatements, the Court need not address the Parties' arguments concerning reliance based on the Affiliated Ute presumption."  *See* Order at 16 n.2.  Thus, if upon reconsideration, the Court finds that the pure omission discussed in this Section is adequately pled, the Court should reconsider this decision regarding *Affiliated Ute*.

It is well established that *Affiliated Ute* is applicable where a pure omission is alleged, notwithstanding the presence of other false statements.  *E.g., Affiliated Ute* 406 U.S. at 131 (finding presumption of reliance based on breached fiduciary duty and also finding various misstatements); *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 186 (S.D.N.Y. 2005) ("courts in this Circuit" acknowledge that *Affiliated Ute* applies when plaintiff alleges a "combination of omissions and misstatements"); *In re Smith Barney Transfer Agent Litig.*, 290 F.R.D. 42, 48 (S.D.N.Y. 2013) (recognizing false statements and applying *Affiliated Ute* because related omissions breached disclosure duty set by regulation).

In light of well-pled allegations and relevant controlling law, Plaintiff respectfully requests that the Court reconsider its Order on this point.

## V.     CONCLUSION AND REQUEST IN THE ALTERNATIVE

For the foregoing reasons, the Court should reconsider the Order.  If the Court denies the request for reconsideration or upon reconsideration grants the motion to dismiss, Lead Plaintiff requests a pre-motion conference to request leave to file a Second Amended Complaint, pursuant to Rule 15 of the Federal Rules of Civil Procedure and the Individual Practices of Judge Andrew L. Carter Jr.  *See generally* Fed. R. Civ. P. 15(a)(2) (leave to amend should be 'freely give[n] . . . when justice so requires."); *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.") (citation omitted).

DATED:  October 15, 2019                       LABATON SUCHAROW LLP

By: */s/ Carol C. Villegas*
Carol C. Villegas
David J. Schwartz
Jake Bissell-Linsk
140 Broadway, 34th Floor
New York, NY  10005
Telephone: (212) 907-0700
Fax: (212) 818-0477
cvillegas@labaton.com
dschwartz@labaton.com
jbissell-linsk@labaton.com

*Lead Counsel for Lead Plaintiff and the Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 15, 2019, a copy of the foregoing was filed electronically via the Court's CM/ECF system.  Notice of this filing will be sent by e-mail to all parties whose counsel has appeared in this action, by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

_/s/ Carol C. Villegas_

Carol C. Villegas
