UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE SHANDA GAMES LIMITED<br>SECURITIES LITIGATION | Case No. 1:18-CV-02463 (ALC) |

**LEAD PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION FOR RECONSIDERATION
OR, ALTERNATIVELY, FOR A PRE-MOTION CONFERENCE
TO SEEK LEAVE TO FILE A SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

I.   PRELIMINARY STATEMENT ..................................................................................... 1

II.  ARGUMENT .................................................................................................................... 1

    A.   Plaintiff's 20A Insider Trading Claims Are Adequately Pled and Were Not Considered By the Order .......................................................................................... 1

        1.   Shanda Purchased Plaintiff's Shares and is Liable Under 20A ................................. 1

        2.   Shanda Bought Plaintiff's Shares While in Possession of Material Non-Public Information about Mir II Mobile's Success ...................................................... 4

    B.   Plaintiff May Utilize Fraud on the Market Reliance .......................................... 5

    C.   Plaintiff Adequately Pled Pure Omissions That the Order Did Not Address .................. 7

        1.   Pure Omissions in Breach of Duties Imposed by Cayman Law .............................. 7

        2.   Pure Omissions in Breach of Duty to Disclose Prior to Trading .............................. 9

III. CONCLUSION AND REQUEST IN THE ALTERNATIVE ................................................. 9

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Affiliated Ute Citizens of Utah v. U.S.*,
  406 U.S. 128 (1972) ................................................................................................................9

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*,
  No. 04 CIV 10014 (PKL), 2010 WL 3306876 (S.D.N.Y. Aug. 20, 2010) ........................... 7-8

*Ark. Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*,
  879 F.3d 474 (2d Cir. 2018) ....................................................................................................5

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) .......................................................................................................5, 6, 7

*Black v. Finantra Capital, Inc.*,
  418 F.3d 203 (2d Cir. 2005) ................................................................................................5, 6

*Davis v. Scottish Re Grp. Ltd.*,
  159 A.D.3d 528 (N.Y. App. Div. 2018) ............................................................................... 7-8

*John Wiley & Sons, Inc. v. Livingston*,
  376 U.S. 543 (1964) ................................................................................................................3

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  40 F. Supp. 3d 332 (S.D.N.Y. 2014) .....................................................................................10

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015) ..................................................................................................10

*Pasternack v. Shrader*,
  863 F.3d 162 (2d Cir. 2017) ............................................................................................. 9-10

*In re Petrobras Sec.*,
  862 F.3d 250, 258 (2d Cir. 2017) ............................................................................................5

*Radiation Dynamics, Inc. v. Goldmuntz*,
  464 F.2d 876 (2d Cir. 1972) ....................................................................................................3

*Simon DeBartolo Grp. v. Richard E. Jacobs Grp.*,
  186 F.3d 157 (2d Cir. 1999) ....................................................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ................................................................................................................4

*Vine v. Beneficial Finance. Co.*,
    374 F.2d 627 (2d Cir. 1967) ............................................................................................. 2, 3, 6

*Waggoner v. Barclays PLC*,
    875 F.3d 79 (2d Cir. 2017) ..................................................................................................... 9

**Other Authorities**

Fed. R. Civ. P. 15(a)(2) ...................................................................................................................9

Fed. R. Civ. P. 44.1 ........................................................................................................................7

**I.     PRELIMINARY STATEMENT**

The Court's Order[1] found that Shanda violated the securities laws. Shanda defrauded the market by making false and misleading statements with scienter about the Company's value to its shareholders. But the Court also held that Plaintiff had not adequately pled reliance. Because of this, the Order held that Shanda's violation of the law is not actionable. Plaintiff has moved for reconsideration of the decision because, as Plaintiff respectfully contends, the Order's analysis of the fraud on the market presumption of reliance overlooks controlling law.

Plaintiff has also moved for reconsideration because the Court has not yet ruled on Plaintiff's insider trading claims or omission claims based on Cayman Law. Even if the Court holds that reliance has not been adequately pled, these two independent claims would still provide an avenue for shareholders to hold Shanda accountable for its fraud.

**II.    ARGUMENT**

    **A.    Plaintiff's 20A Insider Trading Claims Are Adequately Pled and Were Not Considered By the Order**

        **1.    Shanda Purchased Plaintiff's Shares and is Liable Under 20A**

This Court has already ruled that Shanda made false and misleading statements about depreciation and the "2020 Data" with scienter. Order at 10–11. These findings are not in dispute on this Motion. It follows from these findings—and Shanda's opposition to the Motion does not dispute—that Shanda possessed material nonpublic information about the depreciation and 2020 Data at the time Plaintiff's shares were sold. *See* MfR at 5.

Due to its possession of this information, Shanda is liable for insider trading. *Id.* The Order did not address these claims and they should be reconsidered. Shanda also does not

---

[1] Terms are defined as in Plaintiff's Memo for Reconsideration (ECF No. 59) (the "Motion," cited as "MfR"). Shanda's opposition to the Motion (ECF No. 61), is cited as "MfR Opp."

1

dispute (and thus concedes) that reliance is not an element of 20A claims (*see* MfR at 3–4). In fact, Shanda **only disputes one element** of these 20A claims: whether Shanda was the purchaser.

Shanda points the finger at its owner Capitalhold Ltd. ("Capitalhold"), whom it says was the ultimate purchaser. But, Shanda essentially admits that Capitalhold was not the **direct** purchaser, because, as Shanda argues, Capitalhold acted through a subsidiary Capitalcorp Ltd. ("Capitalcorp"), and "so" (*i.e.*, through this agency relationship) Capitalhold was a purchaser, as well. MfR Opp. at 7 n.6. Importantly, Shanda does not dispute that the direct purchaser (in their world view – the subsidiary, Capitalcorp) is also legally a purchaser. MfR at 5–7.

Thus, the issue in dispute is narrow—the parties disagree about which entity was the direct purchaser. Plaintiff says it was Shanda. Shanda disagrees and claims that Capitalcorp was the direct purchaser. *Id.* Plaintiff is correct under controlling law and his 20A claims are viable.

Both sides have pointed to *Vine v. Beneficial Finance. Co.*, 374 F.2d 627 (2d Cir. 1967), as controlling law.[2] *Vine* proves Shanda is the purchaser.[3] *Vine* held that the direct purchaser was Beneficial Finance Company of New York, Inc. ("Beneficial NY"), the survivor of the merger. *See Vine*, 374 F.2d 630-63; MfR at 6 n.3; MfR Opp. at 6 n.5. Here, the surviving entity of the merger is Shanda. MfR at 6; *see also* AC ¶ 147.

*Vine* leaves no room to doubt that the surviving entity (post-merger) was the purchaser. This reading is compelled by *Vine's* most famous holding—that a "forced seller" has standing to sue in connection with a securities sale, regardless of whether he has tendered his shares, because

---

[2] Shanda says that the frequency of merger-related Delaware breach of fiduciary duty suits suggests that Shanda is not the purchaser. MfR Opp. at 7. This makes no sense. The relative frequency of types of litigation says nothing about who the purchaser is in federal fraud cases.

[3] After relying on *Vine* throughout its briefing, Shanda now tries to run from it. *Compare* Reply at 4 ("*Vine* proves Shanda's argument") *and* MtD Reply at 8 ("*Vine* disproves [Plaintiff's] argument" and shows who purchased) *with* MfR Opp. at 6 (calling *Vine* "inappropriate").

2

he will "*eventually* become a party to a 'sale,'" when he tenders after the merger is closed.  *Vine*, 374 F.2d 634. (emphasis added).  Thus, *Vine* says the **actual sale** occurs **after** the merger closes, meaning that the purchaser **must** be the survivor of the merger.  *See* MtD Opp. at 19–20; Sur-Reply at 1; MfR at 6.[4]  The following diagram illustrates this conclusion by comparing the entities in the *Vine* and *Shanda* cases.  As shown in the diagram, post-merger Beneficial NY was the purchaser in *Vine*.  The corollary here is that post-merger Shanda was the purchaser:



Plaintiff has repeatedly pointed to *Vine* as the authority on who the purchaser is and filed a 103-page complaint detailing Shanda's issuance of false documents soliciting Plaintiff to sell.  Where a party commits to buy stock, that party is the purchaser, since liability attaches based on the "commitment" to buy in the "contractual sense," and not based on "performance" (*e.g.*, making payment).  *See Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 891 (2d Cir. 1972).  So, while Plaintiff admits the Amended Complaint erred in alleging that this payment was made by Shanda, Plaintiff rejects Shanda's fabrication that Plaintiff alleged this was "the best way to ascertain the purchaser."  *Id.*  It is not.  The counterparty to Plaintiff's sale was Shanda; it offered to buy the shares (by way of its Proxies), which offer Plaintiff accepted by

---

[4] Confusingly, Shanda complains that "Monk does not allege . . . that the pre-transaction Shanda bought his stock." MfR Opp. at 7.  Shanda is right—Plaintiff has always said the purchaser was Shanda, ***as survivor of the merger and consistent with Vine.***  *See* MtD Opp. at 19–20; Sur-Reply at 1; MfR at 6.  Though, even if pre-merger Shanda were the purchaser, it would still be liable, as the "general rule" is that the survivor of a merger is "liable for the debts and contracts" of its predecessor.  *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 550, n. 3 (1964).

3

tendering.  *See* MtD Opp. at 19–20.  At absolute most, weighing the significance of Shanda as offeror and Capitalhold as payor poses a fact issue, not grounds to dismiss.[5]

### 2. Shanda Bought Plaintiff's Shares While in Possession of Material Non-Public Information about Mir II Mobile's Success

As stated in the prior Section, there is no dispute at this stage that Shanda possessed material non-public information about the depreciation figures and the "2020 Data."  Thus, the 20A claims about this information should proceed, since the only point of dispute is whether Shanda was the purchaser - and Plaintiff has shown that it was.  Additionally, Plaintiff alleged that Shanda also possessed material non-public information about Mir II Mobile's success.

Shanda argues that the omission of fulsome disclosure regarding Mir II Mobile's success is inactionable because the Amended Complaint supposedly does not state when the undisclosed information was known.  MfR Opp. at 15.  Not so.  The Amended Complaint alleges that Shanda knew of the game's success ***before*** it bought Plaintiff's stock—including due to near real-time access to data about the game's financial performance (AC at ¶¶ 137–143, 261-267).  Further, ***Shanda conceded*** that it knew of the game's success after it launched.  MtD at 19.  That Shanda knew material undisclosed information is obvious—the game made over $92 million each month ***prior*** to Shanda buying Plaintiff's stock.  However, the purported expectation, reflected in Shanda's Proxy, was that it would only earn $15 million in its lifespan.  *See* AC ¶¶ 77, 122(c).  Shanda's knowledge of this success, which was reflected in its near-real time data, is "at least as compelling" and certainly more plausible than the opposing inference, which is that Shanda had no idea how much its most critical game made at its launch.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

---

[5]  That Capitalhold "cut a check" does nothing to clarify which party was the direct purchaser, and even Shanda concedes that the direct purchaser was not Capitalhold.  *See* MfR Opp. at 7 n.6.

4

### B.     Plaintiff May Utilize Fraud on the Market Reliance

The Order held that Plaintiff could not utilize the fraud on the market presumption, because the sale of shares as part of the merger did not "constitute an efficient market." Order at 17. The motion for reconsideration cited controlling law holding that Plaintiff's sale need not "constitute" an efficient market—because, there is no dispute that the NASDAQ was an efficient market and, ***where an efficient market exists***, Plaintiff is entitled to a ***presumption*** that he relied on ***that*** market regardless of where or how he trades. MfR at 8–9 (citing *Ark. Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474 (2d Cir. 2018); *Basic Inc. v. Levinson*, 485 U.S. 224 (1988)). This is true even where the transaction was privately negotiated. *Id.* (citing *Black v. Finantra Capital, Inc.*, 418 F.3d 203 (2d Cir. 2005); *In re Petrobras Sec.*, 862 F.3d 250, 258 (2d Cir. 2017)). These holdings of *Goldman*, *Basic,* and *Black* were explained in Plaintiff's opposition to the motion to dismiss (MtD Opp. at 15), but were not addressed by the Order.

As the motion for reconsideration made clear, as long as an efficient market exists (like here, where Shanda traded on the NASDAQ), there is a presumption that any decision made to sell (or not sell) the security is made in reliance on the market price. This presumption is firmly established by *Basic* and does not require proof at the pleading stage. If Shanda seeks to rebut that reliance, it may attempt to do so by the submission of evidence after the pleading stage.

Shanda argues, though, that "because Monk cannot plead that he ***chose to buy or sell stock*** in the Transaction, the *Basic* presumption does not apply." MfR Opp. at 9. As a threshold issue, Shanda's argument is at odds with the Order, as the Order stated the Court's decision was made, not based on whether Plaintiff alleged he "made a choice" to sell, but rather, "in light of the factors typically considered in determining whether a market is efficient." Order at 17. But in Shanda's argument, factors of market efficiency would not have come into play at all, since according to Shanda, Plaintiff must ***first prove*** that he "chose" to sell. Thus, Shanda defends the

5

Order on grounds not relied upon therein. However, Shanda's theory amounts to nothing less than a request that this Court overturn the Supreme Court's *Basic* decision, by requiring **proof** of Plaintiff's "choice," which would be tantamount to proof of **actual reliance**. Shanda cites no case requiring a separate showing that Plaintiff made a "choice" to sell.[6]

But Shanda's argument is not *really* that plaintiffs must prove they made a choice, rather Shanda vaguely argues that because Plaintiff was a "forced seller" this situation has special rules. MfR Opp. at 10. However, as the Order clearly understood, "Plaintiff alleges that the Proxies . . . induced him . . . to sell . . . at artificially deflated prices and to refrain from exercising his appraisal rights." Order at 2. Plaintiff is entitled to a presumption that, in reliance on the market price, he made the choice to sell as part of the merger, instead of seeking appraisal. AC ¶281.[7]

Shanda's effort to contort *Black* into support for its theory is instructive. MfR Opp. at 11. Shanda claims that *Black* allowed the presumption because "plaintiff testified that he ***personally had relied on the market price.***" *Id.* This egregiously misstates the case. *Black* did not require testimony to find that the plaintiff was entitled to the presumption—the testimony was ***only*** relevant to analyzing defendant's attempt to rebut the presumption ***at trial*** – well past the pleading stage. *See* MfR at 11–12. On the pleadings, the court permitted the presumption.

Respectfully, the Order erred in holding that Plaintiff could not invoke the fraud on the market presumption, because his sale did not "constitute" an efficient market. Shanda's

---

[6] Shanda also quotes language that mentions plaintiffs trading "at" the market price. MfR Opp. at 8. Plaintiff previously explained that this language does not refer to a requirement. MtD Opp. at 15. If it did, it would contradict *Finantra*, where plaintiff did not trade "at" market price.

[7] Shanda misconstrues the concept of a "forced seller." The term does not imply that Plaintiff lacked choice. It refers to the fact that once the merger closes, one has standing to sue regardless of when they tender, because at that time their "sale" is a surety, since they will "eventually become a party to a 'sale,'" when they tender their shares. *Vine*, 374 F.2d 634. Plaintiff is entitled to a presumption that he chose to sell in reliance on the market price, by choosing to become a "forced seller," rather than seeking appraisal.

alternative defense of the Order's conclusion – that Plaintiff must show proof at the pleading stage that he made a decision based on the market price – would also be an error, as *Basic* provides Plaintiff a presumption of reliance at this stage of the litigation.

### C. Plaintiff Adequately Pled Pure Omissions That the Order Did Not Address

Even if the Court sustains its holding that Plaintiff did not adequately plead reliance under the *Basic* presumption, the Court may still conclude that Plaintiff is entitled to a presumption of reliance based on *Affiliated Ute*. The Order held that this presumption did not apply because the Court did not find any omissions. Order at 16 n.2. However, the Court did not consider two omissions, both of which are actionable through invocation of *Affiliated Ute.*

#### 1. Pure Omissions in Breach of Duties Imposed by Cayman Law

Plaintiff alleged that, under Cayman law, Shanda had a duty to provide shareholders with "sufficient information" about the Company when it called for the shareholder meeting and fell short of this duty by failing to provide information that was important to valuing the Company, such as reasonably prepared projections and information about the tremendous success of Mir II Mobile. *See* AC ¶77; Opp. at 6; Sur-Reply at 3; MfR at 16. This issue was not addressed by the Order, and Shanda provides no real basis for its opposition to reconsideration. Instead, Shanda asserts flawed arguments on the merits to advocate for dismissal.

Plaintiff has not only provided the **correct** interpretation of Cayman law, he is also the only party to provide **any** meaningful interpretation of the law. Both sides agree that issues of foreign law are a question of law. Sur-Reply at 3; MfR Opp. 13 n. 10. In determining foreign law, the Court "may consider any relevant material or source." Fed. R. Civ. P. 44.1. Plaintiff has demonstrated that Cayman law imposes a duty to provide "sufficient information" by citing *Davis*. *See* Opp. at 17 (citing *Davis v. Scottish Re Grp. Ltd.*, 159 A.D.3d 528, 529 (N.Y. App. Div. 2018)); *see Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, No. 04 CIV 10014

7

(PKL), 2010 WL 3306876, at *5 (S.D.N.Y. Aug. 20, 2010) (applying party's interpretation of foreign law after considering relevant case law submitted by the party, among other authorities).[8]

Plaintiff's reliance on *Davis* is directly on point. *Davis* held that, under Cayman law, where defendants provided shareholders with a "statement providing information and recommendations about the merger transaction, they owed the shareholders a 'sufficient information duty.'" 159 A.D.3d at 529 (quoting *Sharp v Blank*, [2015] EWHC 3220 [Ch], ¶ 5). Shanda notes that Plaintiff previously quoted a part of the *Davis* opinion that recounted plaintiff's allegations (*see* MfR Opp. at 14 n.11), but it was these allegations that *Davis* upheld as actionable. Indeed, *Davis* found it to be actionable that the defendants "failed to provide a meaningful valuation of ordinary shares using industry standards." *Id.* at 529–530.

Shanda attempts to misconstrue Plaintiff's argument into a requirement to provide "product-specific revenue information." MfR Opp. at 14. Shanda's Cayman law obligation was to provide sufficient information—a duty it flunked by omitting information needed for investors to understand the Company's value—which value included the success of Mir II Mobile. Shanda could have satisfied that duty by disclosing product specific figures, or by providing aggregate figures that accounted for the true status of the Company. Instead, the Final Proxy reprinted stale projections – based on the assumption that Mir II Mobile would earn only $15 million in its lifetime, despite it having, ***at the time the Final Proxy was issued***, already produced nearly $100 million in revenue in the first month after its launch. AC ¶122(c).

---

[8] Shanda's argument that it is somehow significant that the Cayman appraisal action did not discuss Shanda's duties is absurd. MfR Opp. at 13. An appraisal suit does not evaluate breached duties—it simply values the shares. The Cayman court did not review Shanda's duties, while finding that Shanda had grossly underpaid, because doing so was wholly irrelevant to that action.

8

The omissions here are actionable under the *Affiliated Ute* presumption of reliance. MfR at 17 (citing *Affiliated Ute Citizens of Utah v. U.S.,* 406 U.S. 128 (1972)). Plaintiff has repeatedly explained that an omission, in the face of an affirmative disclosure duty, is entitled to the *Affiliated Ute* presumption. *Id.* Shanda has continued to cite to *Waggoner* to argue that *Affiliated Ute* is inapplicable because Plaintiff has also alleged false statements. MfR Opp. at 16–17 (citing *Waggoner v. Barclays PLC*, 875 F.3d 79, 95 (2d Cir. 2017)). This ignores the context of *Waggoner*, which recognized that many misleading statements are misleading due to what they omit, but that such omissions do not qualify for the *Affiliated Ute* presumption. *Waggoner,* 875 F.3d at 95. In contrast, claims based on **affirmative duties** (like here) are entitled to *Affiliated Ute*, which itself involved both omissions and misstatements. MfR at 17.

### 2. Pure Omissions in Breach of Duty to Disclose Prior to Trading

As explained in Section II, Plaintiff alleged an insider trading claim under 20A – which does not require reliance. Plaintiff, however, has additional and separate insider trading claims which are actionable under §10(b) which, if brought under § 10(b), do require reliance. The Court may allow these claims to proceed, if it finds that the omissions should be afforded the *Affiliated Ute* presumption of reliance. *Affiliated Ute*, 406 U.S. at 131; *Simon DeBartolo Grp. v. Richard E. Jacobs Grp.*, 186 F.3d 157, 173 (2d Cir. 1999) (*Ute* applied to insider trading claim brought pursuant to 10(b) (not brought pursuant to 20A)).

### III.   CONCLUSION AND REQUEST IN THE ALTERNATIVE

For the foregoing reasons, the Court should reconsider the Order and deny the motion to dismiss. Alternatively, the Court should grant Plaintiff's request for a pre-motion conference to request leave to file a Second Amended Complaint. *See* Fed. R. Civ. P. 15(a)(2) (leave to amend should be "freely give[n] . . .when justice so requires."); *Pasternack v. Shrader*, 863 F.3d 162,

9

174 (2d Cir. 2017) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.") (citation omitted).

Depending on the Court's Order here, a Second Amended Complaint may contain the following: **First**, if the Court rejects Plaintiff's view that Shanda is the purchaser of his shares, Plaintiff could amend to allege that pre-merger Capitalcorp had the same material non-public information as Shanda due to Defendant Zhang's role at Capitalcorp. This would not even require naming a new party, as Shanda is the successor to pre-merger Capitalcorp and inherited its liability. **Second**, Plaintiff could add Capitalhold, Shanda's controller, as a Defendant.[9] This entity also was imputed with Defendant Zhang's knowledge, as he controlled it as well. **Third**, if the Court finds that additional allegations are needed to invoke the fraud on the market reliance, Plaintiff could provide these allegations in a Second Amended Complaint.

Shanda's opposition complains that Plaintiff has not requested to amend at an earlier stage in this litigation. MfR Opp. at 17. But Plaintiff has previously indicated a willingness to cure deficiencies through amendment. *See* MtD Opp. at 21. More importantly, Plaintiff is confident that the pleadings are sufficient, and he should not be required to guess how the Court will rule, when any deficiencies are readily curable. Requiring amendment prior to a ruling is improper because "[w]ithout the benefit of a ruling" Plaintiff may not be "in a position to weigh the practicality" or "means of curing specific deficiencies." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160, 190 (2d Cir. 2015). If the Court denies the Motion, Plaintiff respectfully requests a pre-motion conference to discuss how an amendment could cure any deficiencies in an amended complaint, and an appropriate schedule to do so.

---

[9] Leave to amend is further justified given that even a new suit against Capitalhold would be timely. *See Kaplan v. S.A.C. Capital Advisors, L.P.*, 40 F. Supp. 3d 332, 343 (S.D.N.Y. 2014) (applying 20A's five-year limitations period to claims arising out of § 10(b) violations).

| | |
|---|---|
| DATED:  November 5, 2019 | LABATON SUCHAROW LLP<br><br>By: */s/ Carol C. Villegas*<br>Carol C. Villegas<br>David J. Schwartz<br>Jake Bissell-Linsk<br>140 Broadway, 34th Floor<br>New York, NY  10005<br>Telephone: (212) 907-0700<br>Fax: (212) 818-0477<br>cvillegas@labaton.com<br>dschwartz@labaton.com<br>jbissell-linsk@labaton.com<br><br>*Lead Counsel for Lead Plaintiff and the Class* |

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 5, 2019, a copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties whose counsel has appeared in this action, by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

                                                  */s/ Carol C. Villegas*
                                                    Carol C. Villega