USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED:   9/30/2020

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

---

**IN RE SHANDA LIMITED SECURITIES LITIGATION**

**1:18-cv-02463 (ALC)**

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

## INTRODUCTION

On September 30, 2019, this Court issued an Opinion dismissing Plaintiff's Amended Complaint. On October 25, 2019, Plaintiff moved the Court to reconsider that Opinion, or, in the alternative, for leave to amend the complaint. Upon careful consideration, Plaintiff's motion is DENIED in part and GRANTED in part. To the extent reconsideration is granted, the Court finds Plaintiff's arguments without merit.

## BACKGROUND

The facts of this case were fully set forth in the Court's Opinion dated September 30, 2019. *In re Shanda Games Ltd. Sec. Litig.,* No. 1:18-cv-02463 (ALC), 2019 U.S. Dist. LEXIS 171592 (S.D.N.Y. Sep. 30, 2019). Accordingly, familiarity with the facts is assumed and the summary to follow will only highlight facts necessary for the motion presently before the Court.

Defendant Shanda Games is a global video game company incorporated and headquartered in the Cayman Islands. Amended Complaint ("AC"), ECF No. 25 ¶ 5. On April 3, 2015, Shanda announced a merger agreement by which the company would go private. AC ¶¶ 10, 102. Although the prospective buyers, the "Buyer Group", controlled enough Shanda votes to enter into the

transaction, Shanda was required to file initial and final proxy statements to allow shareholders to determine whether they wanted to accept the offer price or exercise appraisal rights. AC ¶ 108.

On May 5, 2015, Defendant Shanda published an initial proxy statement ("Initial Proxy") explaining the merger that included, *inter alia*, projections for an unreleased game called Mir II Mobile. It subsequently published a final proxy statement on October 13, 2015, ("Final Proxy"), that included the same projections. AC ¶¶ 131-132.

Shareholders approved the merger on November 18, 2015. AC ¶¶ 22, 144. Under the merger agreement, Shanda stockholders received $3.55 per share and Shanda ADS owners received $7.10 per ADS. AC ¶¶ 144-45. "As a result of the Transaction, Shanda merged into Capitalcorp Limited, a Cayman Islands corporation created for the purpose of the Transaction. AC ¶ 147. Shanda was the surviving entity of that merger and became a wholly owned subsidiary of Capitalhold Limited, a Cayman Islands corporation. AC ¶ 147. Capitalhold Limited was owned by a set of individuals Plaintiff refers to as Buyer Group 5, which thereby indirectly owned Shanda. AC ¶ 147.

Some dissenting shareholders exercised their appraisal rights and brought suit against Defendant Shanda, seeking the Grand Court of the Cayman Islands' determination of the fair value of its shares. AC ¶¶ 22-23, 151. The Court of Appeal of the Cayman Islands determined the fair value of the shares was $12.84 per ADS. AC ¶¶ 25.

## STANDARD OF REVIEW

Reconsideration "is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Sigmon v. Goldman Sachs Mortgage Co.*, 229 F. Supp. 3d 254, 257 (S.D.N.Y. 2017) (citing *Anwar v. Fairfield Greenwich Ltd.*, 164 F. Supp.

3d 558, 560 (S.D.N.Y. 2016). A court will grant such a motion only where the party seeking reconsideration identifies "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citing *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citing *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990)). The decision to grant or deny a motion for reconsideration is committed to the sound discretion of the district court, but in exercising that discretion, the court "must be mindful that a motion for reconsideration is not favored and is properly granted only upon a showing of exceptional circumstances." *Boyd v. J.E. Robert Co.*, No. 05-CV-2455, 2013 WL 5436969, at *2 (E.D.N.Y. Sept. 27, 2013), *aff'd*, 765 F.3d 123 (2d Cir. 2014) (quoting *Nakshin v. Holder*, 360 Fed.Appx. 192, 193 (2d Cir. 2010)).

## DISCUSSION

1. Applicability of the Presumption of Reliance

In its September 30, 2019 Opinion, the Court concluded that Plaintiff failed to plead an efficient market, and therefore failed to plead that the presumption of reliance was applicable. Opinion at 25. Plaintiff asks the Court to reconsider this conclusion, directing the Court to purportedly controlling precedent on the breadth of the presumption of reliance and its applicability in off-market transactions. However, none of the authority that Plaintiff points to shows clear error in this Court's conclusion, nor that reconsideration is necessary to prevent manifest injustice.

3

Plaintiff cites cases that set forth the fundamentals of the presumption of reliance: *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988), *Ark. Teachers Ret. Sys. v. Goldman Sachs Grp., Inc.*, 879 F.3d 474 (2d Cir. 2018) and *Black v. Finantra Capital, Inc.*, 418 F.3d 203, 210 (2d Cir. 2005). But the Court's conclusion that Plaintiff failed to demonstrate an efficient market and thereby plead reliance was not predicated on a disagreement with the fundamentals of the *Basic* presumption. Rather, it was in acknowledgement of the unique application that Plaintiff seeks.

Plaintiff has pleaded that but for Shanda's alleged fraud "the market price for Shanda's ADS would have reflected its true value (notwithstanding the fact that Buyer Group 5 had enough votes to force the Transaction to be completed at the $7.10 per ADS price), because the availability of appraisal as a remedy would have prevented the deal price from serving as a ceiling limiting the upper-price of the Shanda Securities." AC ¶ 280.

In light of the unique conditions that Plaintiff set off as a "notwithstanding" parenthetical, this Court looked to cases like *In re Initial Public Offerings Securities Litigation.* There, the Second Circuit concluded that "the Plaintiffs' own allegations and evidence" demonstrated a lack of efficient market because IPO markets are generally not efficient, and plaintiff alleged the market was slow to integrate corrective information. 471 F.3d 24, 42 (2d Cir. 2006), *decision clarified on denial of reh 'g sub nom. In re Initial Pub. Offering Sec. Litig.*, 483 F .3d 70 (2d Cir. 2007).

Like in *In re Initial Public Offerings Securities Litigation*, the facts Plaintiff pleaded do not make out an efficient market during the class period. According to Plaintiff, "Shanda Securities were covered by numerous securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective firms, *though many of these firms discontinued coverage after the announcement of the proposed*

*Transaction*." AC ¶ 283 (emphasis added). The suspension of analyst coverage at the beginning of the class period in response to the at-issue transaction points towards an inefficient market.

While Plaintiff pleads that "[t]he market reacted promptly to public information disseminated by Shanda", AC ¶283(e), its allegations do not show that. Plaintiff alleges Shanda and the press publicly discussed the great demand and expectations for MIR II Mobile during the class period, AC ¶ 76. But Plaintiff does not plead a single increase in Shanda stock associated with any such announcements. Rather, Plaintiff pleads that the market price of Shanda ranged between $6.07 per share and $6.98 for the duration of the class period. AC ¶ 279. That is, regardless of public statements about Mir II Mobile being massively successful, the share price never went above the $7.10 per ADS price at which the transaction eventually occurred. This too points to a lack of an efficient market that was incorporating news about Shanda's value into its price.

In light of this, the Court finds no clear error in its conclusion that Shanda failed to plead an efficient market, such that ADS holders could have reasonably relied on the integrity of the market price when they chose to sell shares. Plaintiff's request for reconsideration as to reliance is DENIED.

2. Insider Trading Pursuant to Securities Exchange Act of 1934 Section 10(b), Securities Exchange Commission Rule 10b-5 and Section 20A by Shanda

The Court recognizes that its Opinion overlooked Plaintiff's insider trading arguments. The Court will therefore GRANT Plaintiff's request to reconsider this issue. First, Plaintiff asks the Court to reconsider whether Plaintiff adequately pleaded that Shanda committed an insider trading violation under Section 10(b), and therefore pleaded a Section 20A claim against Shanda. ECF No. 59 at 5. Second, Plaintiff asks the Court to reconsider whether "under insider trading law,

Shanda had a duty to disclose all material information prior to buying Plaintiff's ADS", such that Shanda not releasing the Mir II Mobile data is actionable. ECF No. 59 at 15-16. For the reasons that follow, the Court finds no merit in Shanda's insider trading arguments.

Section 10(b) of the Securities Exchange Act of 1934 and Securities Exchange Commission Rule 10b-5 are "violated when a corporate insider trades in the securities of his corporation on the basis of material, nonpublic information." *United States v. O'Hagan*, 521 U.S. 642, 651–52 (1997). Thus, "a corporate insider must abstain from trading in the shares of his corporation unless he has first disclosed all material inside information known to him." *Chiarella v. United States*, 445 U.S. 222, 227 (1980). The Second Circuit has explained that "[a]ny duty of disclosure is owed only to those investors trading contemporaneously with the insider; non-contemporaneous traders do not require the protection of the 'disclose or abstain' rule because they do not suffer the disadvantage of trading with someone who has superior access to information." *Wilson v. Comtech Telecommun. Corp.*, 648 F.2d 88, 94-95 (2d Cir. 1981) (citing *Fridrich v. Bradford*, 542 F.2d 307, 326 (6th Cir. 1976) (Celebrezze, J., concurring), *cert. denied*, 429 U.S. 1053 (1977)).

Similarly, in creating a private cause of action for insider trading, Section 20A expressly limited standing to contemporaneous investors in securities of the same class. 15 U.S.C. § 78t-1(a). "In order to state a claim under Section 20A(a), plaintiffs must: (1) plead a predicate insider trading violation of the Exchange Act, and (2) allege sufficient facts showing 'that the defendant traded the security at issue 'contemporaneously' with the plaintiff.'" *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 309 (S.D.N.Y. 2008) (citations omitted).

Here, Plaintiff's insider trading claims center on the completion of the going-private transaction. Plaintiff asserts that Shanda was the purchaser in that transaction—in which case the

contemporaneous trading requirement would be met. However, Plaintiff has not pleaded facts to support this assertion.

Plaintiff concedes that Shanda was not the payor in the going-private transaction. Reply at 3 (". . . Plaintiff admits the Amended Complaint erred in alleging that this payment was made by Shanda. . . ."). The Final Proxy and Merger Agreement indicate that the entities that paid for the shares were Capitalhold Limited, an exempted company with limited liability incorporated under the laws of the Cayman Islands, and Capitalcorp Limited, an exempted company with limited liability incorporated under the laws of the Cayman Islands and a wholly owned subsidiary of Capitolhold. ECF No. 45-1 at I; ECF No. 61-1 at 10.

Plaintiff takes the position that Shanda is a purchaser as well but fails to plead facts substantiating how. Plaintiff seems to suggest that the sale of the ADS occurred after the Transaction from which Shanda was the surviving corporation. ECF No. 56 at 18-10. This is not right. "[T] he time of a 'purchase or sale' of securities within the meaning of Rule 10b-5 is to be determined as the time when the parties to the transaction are committed to one another." *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 891 (2d Cir. 1972). The Final Proxy indicates that shareholders had to commit to sale or appraisal pre-merger. It states: "Shareholders who elect to dissent from the Merger will have the right to receive payment of the fair value of their Shares if the Merger is completed, *but only if they deliver to the Company, before the vote for the Merger is taken at the extraordinary general meeting*, a written objection to the Merger and subsequently comply with all procedures and requirements of [the appropriate Cayman Islands Company Law] for the exercise of dissenters' rights. . . ." ECF No. 45-1 at iv (emphasis added). Indeed, Plaintiff twice pleaded that he sold his shares on November 18, 2015, AC ¶¶ 31, 287, to which admission he is bound. *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) ("A

party's assertion of fact in a pleading is a judicial admission by which it normally is bound . . . ."). The commitment to accept or appraise precedes the merger, and therefore the existence of the surviving corporation Shanda.

Aside from the timing argument, which is rendered implausible by the Final Proxy—a document on which Plaintiff repeatedly relies in its Amended Complaint—Plaintiff fails to plead facts that indicate why the purchase of Shanda shares by Capitalhold or Capitalcorp is also a purchase by Shanda. Because Plaintiff has failed to plead contemporaneous trading, both the Sections10b-5 and 20A insider trading claim are rightly dismissed. Since Plaintiff did not plead that Shanda engaged in insider trading, it also necessarily fails to plead that Shanda had a duty pursuant to insider trading law to disclose the Mir II Mobile data.

For these reasons, the Court finds Plaintiff failed to adequately plead these insider trading claims.

3. Cayman Island Duty To Disclose Mir II Mobile Data

The Court will also reconsider whether Cayman Island law required the disclosure of the Mir II Mobile data, which argument the Opinion overlooked. Plaintiff has argued that, pursuant to Cayman Island law, Shanda had a duty to provide Plaintiff and shareholders "sufficient information" to understand the merger, including a "meaningful valuation". Mot. at 16. This duty would, in turn, establish an element of Section 10b liability for Shanda's failure to release the Mir II Mobile data as a pure omission. *See Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011) (requiring (a) a material omission; (b) scienter (c) reliance; (d) a connection between the falsity and the purchase or sale of securities; and (e) economic loss).

Plaintiff pleads that "Cayman Islands corporations, like Shanda, have a duty to provide investors with sufficient information to adequately understand the Transaction that they are called upon to consider". AC ¶ 290. In its briefing, Plaintiff proffers *Davis v. Scottish Re Grp. Ltd.,* 159 A.D.3d 528, 529, 74 (App. Div. 1st Dept) as authority on Cayman law. Plaintiff characterizes *Davis* as indicating that under Cayman law "Shanda must provide its shareholders with 'sufficient information' to understand the merger, including a 'meaningful valuation' of their shares." Mot. at 16. Not so.

The portion of *Davis* on which Plaintiff relies does not support such an expansive duty. Rather, it says:

> "However, **to the extent the director defendants gave shareholders an information statement providing information and recommendations about the merger transaction**, they owed the shareholders a 'sufficient information duty' (*Sharp v. Blank*, [2015] EWHC 3220 [Ch], ¶ 5). This is not a duty of loyalty, which would require the directors to subordinate their interests to the shareholders' interests, but 'if [the directors] are going to invite the shareholders to a meeting, common fairness requires that they explain what the purpose of the meeting is' in a "clear and comprehensible' manner (*id.* ¶ 21)."

*Davis*, 159 A.D.3d at 529-30 (emphasis added). This is not a statement about pure omission. It indicates that when directors make a statement, for example, by giving shareholders an information statement, they have a duty that it not be misleading.

The cited portion of *Davis* indicates that Cayman Island law would ask whether the Final Proxy was misleading because it did not include the Mir II Mobile data. The Court has already concluded that "Plaintiff has failed to demonstrate that the omission was misleading". Opinion at 18-19. Plaintiff has not asked the Court to reconsider this assessment, nor does the Court see any reason this question would come out differently under an analogous Cayman Island framework.

The Court therefore concludes that Plaintiff's allegation that said Cayman duty would give rise to an affirmative duty for Shanda to disclose the Mir II Mobile data is without merit.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration is DENIED in part and GRANTED in part. The Court concludes that the reconsidered arguments lack merit. Consistent with the request from Plaintiff, the Court will issue a scheduling order to consider granting Plaintiff leave to amend. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 66 and 68.

**SO ORDERED.**

**Dated:**      **September 30, 2020**
            **New York, New York**

**ANDREW L. CARTER, JR.**

**United States District Judge**