**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE SHANDA GAMES LIMITED
SECURITIES LITIGATION

Civil Action No. 1:18-cv-02463-ALC

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION BY**
**DEFENDANTS ZHANG, CAPITALCORP AND CAPITALHOLD**
**TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT**

Dated: June 11, 2021

TRACHTENBERG RODES & FRIEDBERG LLP
420 Lexington Avenue
New York, New York  10170
Telephone:  (212) 972-2929
Facsimile:   (212) 972-7581

*Attorneys for Defendants Yingfeng Zhang, Capitalhold*
*Limited and Capitalcorp Limited*

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES..................................................................................................... ii

PRELIMINARY STATEMENT ...............................................................................................1

ARGUMENT ........................................................................................................................2

1. *Morrison* Precludes All Of
   Monk's Exchange Act Claims .................................................................................2

2. Count I Of The SAC (§10(b) Fraud)
   Should Be Dismissed As To Mr. Zhang ..................................................................2

3. Monk's Insider-Trading Claims Against
   Mr. Zhang And The Capital Defendants
   (Counts II and III) Should Be Dismissed...............................................................3

   a. The SAC does not allege that Mr. Zhang or the
      Capital Defendants actually purchased Monk's ADS ................................4

   b. The SAC does not allege that Mr.
      Zhang "tipped" the Capital Defendants .......................................................7

   c. Count II of the SAC is time-barred
      as against the Capital Defendants ...............................................................7

4. Count IV Of The SAC Should
   Be Dismissed As Against Mr. Zhang ......................................................................9

CONCLUSION.....................................................................................................................9

## TABLE OF AUTHORITIES

**PAGE(S)**

### CASES

*Bensinger v. Denbury Res. Inc.*,
  31 F.Supp.3d 503 (E.D.N.Y. 2014) ...................................................................8

*Fogel v Vega,*
  759 Fed.Appx. 18, 2018 WL 6753799 (2d Cir. Dec. 26, 2018) ......................9

*Fogel v Wal-Mart de Mexico SAB de CV,*
  2017 WL 751155 (S.D.N.Y. Feb. 27, 2017)....................................................9

*In re Veon Ltd. Sec. Litig.*,
  2018 WL 4168958 (S.D.N.Y. Aug. 30, 2018)..................................................8

*In re Wachovia Equity Sec. Litig.*,
  753 F.Supp.2d 326 (S.D.N.Y. 2011)................................................................9

*Morrison v. National Australia Bank, Ltd.*
  561 U.S. 247 (2010).........................................................................................2

*Rothman v Gregor*,
  220 F.3d 81 (2d Cir. 2000)...............................................................................8

*S.E.C. v. Obus*,
  693 F.3d 276 (2d Cir. 2012).........................................................................4,7

*Vine v. Beneficial Finance Co.*,
  374 F.2d 627 (2d Cir. 1967)............................................................................5

## STATUTORY AUTHORITIES

**PAGE(S)**

15 U.S.C. § 78j(b) ................................................................................................ *passim*

15 U.S.C. § 78t-1 ...........................................................................................4,7,9

28 U.S.C. § 1658(b) .........................................................................................7,8

## OTHER AUTHORITIES

**PAGE**

Robert P. Bartlett III,
  *Going Private but Staying Public:*
  *Reexamining the Effect of Sarbanes-Oxley on*
  *Firms' Going-Private Decisions*,
  76 U. Chi. L. Rev. 7 (2009) ...............................................................................6

Defendants Yingfeng Zhang ("Mr. Zhang"), Capitalhold Limited ("Capitalhold") and Capitalcorp Limited ("Capitalcorp," and, together with Capitalhold, the "Capital Defendants") respectfully submit this memorandum of law in support of their joint motion to dismiss the Second Amended Complaint (the "SAC") filed in this matter by plaintiff David Monk ("Plaintiff" or "Monk").[1]

### PRELIMINARY STATEMENT

The Court has already issued two orders finding that Plaintiff failed to state a viable fraud claim against Shanda, for reasons equally applicable to its co-defendant Mr. Zhang.  The Court has found that most of the alleged misstatements/omissions are inactionable, and that, in any event, Plaintiff has failed to plead reliance.  (2019 Op. pp. 9-13, 15-17).

Similarly, the Court has already dismissed insider-trading claims against Shanda, for reasons equally applicable to Mr. Zhang and the Capital Defendants.  That is, the Court has found that Monk committed himself to the merger Transaction *before* it closed, rendering "implausible" any insider trading claim based on the closing, and that Shanda did not engage in any trading – i.e., finding that it was not the purchaser in the Transaction.  (2020 Op. pp. 6-8).

There is nothing in the SAC that provides a basis for the Court to reverse its prior decisions.  And, while Monk has named two additional defendants in the SAC – i.e., the Capital Defendants – his claims against them are no better than his claims against Shanda.

For the reasons set forth below, as well as those set forth in the Shanda MOL, the Court should dismiss the SAC as against Mr. Zhang and the Capital Defendants, with prejudice.

---

[1]     Terms defined in Shanda's Memorandum in Support of its Motion to Dismiss the SAC (*see* ECF Doc. 91 ("Shanda MOL")) will have the same meanings herein.

**ARGUMENT**

**1.**  *Morrison* **Precludes All Of Monk's Exchange Act Claims**

As a threshold matter, all claims in the SAC, including those asserted against Mr. Zhang and the Capital Defendants, should be dismissed based on the holding in *Morrison v. National Australia Bank, Ltd.* 561 U.S. 247 (2010).  (*See* Shanda MOL, pp. 23-25).

**2.**  **Count I Of The SAC (§10(b) Fraud) Should Be Dismissed As To Mr. Zhang**

In Count I, the SAC alleges that Mr. Zhang is liable under §10(b) of the Exchange Act for fraud in connection with the purchase or sale of Shanda securities.  (The Capital Defendants are not parties to Count I.)

Count I as against Mr. Zhang fails for the same reasons it fails as against Shanda.  As explained in the Shanda MOL:

- No Reliance:  Like Monk's earlier pleading, the SAC fails to allege reliance: Plaintiff did not read any of the material he claims was misleading and so does not and cannot allege actual reliance, and the SAC provides no basis for the Court to reverse its rejection of the fraud-on-the-market and *Affiliated Ute* presumptions.  (*See* Shanda MOL pp. 9-14, incorporated herein by reference).

- No Loss Causation:  The per-share consideration Plaintiff received as a result of the cancellation of his ADS in the Transaction was agreed to between the Buyer Group and the Special Committee in April 2015 – before any of the allegedly misleading statements were made.  (*See* Shanda MOL pp. 14-15, incorporated herein by reference).

- Inactionable Statements/Omissions:  The Court should adhere to its previous ruling that four of Plaintiff's six alleged misstatements are inactionable.  And the Court should find the other two alleged misstatements concerning the projections inactionable because they were (i) immaterial, (ii) safe-harbored forward looking statements and/or (iii) not false or misleading.  (*See* Shanda MOL pp. 16-21, incorporated herein by reference).

**3.      Monk's Insider-Trading Claims Against Mr. Zhang And**
**<u>The Capital Defendants (Counts II and III) Should Be Dismissed</u>**

Similarly, the insider-trading claims against both Mr. Zhang and the Capital Defendants (Counts II and III) fail for many of the same reasons such claims fail as against Shanda.  Thus:

- No Transaction Causation:  Any alleged violation of insider-trading rules that occurred on November 18, 2015, when the Transaction closed, could not have caused Monk's October 26, 2015 decision to surrender his ADS in the Transaction.  (*See* Shanda MOL pp. 9-14, incorporated herein by reference).

- No Loss Causation:  The per-share amount Plaintiff received as a result of the cancellation of his ADS in the Transaction was fixed in April 2015 – and so could not have been depressed by insider trading alleged to have taken place on November 18, 2015 when the Transaction closed.  (*See* Shanda MOL pp. 8, 14-16, incorporated herein by reference).

In addition, the SAC fails to allege that Mr. Zhang or either of the Capital Defendants engaged in a trade – i.e., actually purchased Monk's ADS – and therefore none had any duty to disclose additional information.  (*See* 2020 Op. p.8 (defendant who did not trade has no disclosure duty)).  As previously admitted by Plaintiff and conclusively established by the

3

Transaction documents cited in the SAC, Monk's ADS were "canceled" in the Transaction, and not sold to anyone. And even if the Transaction, in which shares were canceled in exchange for an IOU, were somehow equated to a securities trade, there is no basis to regard Mr. Zhang or Capitalcorp as the purchaser in such a "trade" – as it was Capital*hold* that paid the merger consideration and ended up owning Shanda. (*See* SAC ¶ 321(b); ECF 62-1 (Plan of Merger) §2.04 ("Parent [defined as Capitalhold] shall deposit, or cause to be deposited, … cash in an amount sufficient to pay the Merger Consideration"). Finally, to the extent Monk's insider-trading claims are brought against the Capital Defendants under §10(b) of the Exchange Act, they are time barred.

a. *The SAC does not allege that Mr. Zhang or the*
   *Capital Defendants actually purchased Monk's ADS.*

Section 20A of the Exchange Act unambiguously imposes liability only on persons who violate the Act "by purchasing or selling" a security on inside information. Similarly, an insider-trading claim under Section 10(b) may be brought only against "insiders or misappropriators who trade for their own account" and tippers/tippees. *S.E.C. v. Obus*, 693 F.3d 276, 285 (2d Cir. 2012). In short, apart from tipping situations, liability for insider trading is limited under both §20A and §10(b) to those who trade – i.e.., actual purchasers and sellers.

Plaintiff does not and cannot allege that Mr. Zhang or either of the Capital Defendants actually purchased Monk's ADS. And even if Plaintiff had done so, the allegation would be implausible given the plain terms of the Transaction, which explicitly states that, upon the effectiveness of the merger Transaction, Plaintiff's ADS were "cancelled" in consideration of a "right to receive $7.10 in cash per ADS." (Final Proxy §2.01(b)). Indeed, Monk has already admitted this is how the Transaction worked, telling the Court in his First Amended Complaint that on November 18 "each share of [Shanda's] common stock was cancelled and converted into

4

and exchanged for the right to receive US$3.55 and each ADS was converted into the right to surrender one ADS in exchange for US$7.10." (FAC ¶ 287; *see also* 2020 Op. at 7-8 (noting that Monk is bound to admissions he makes in his complaints).)   While Monk has removed this allegation in the SAC, and instead pleads that each ADS was "effectively sold" (SAC ¶ 148), he can cite no binding precedent suggesting that insider-trading rules requiring an actual purchase or sale can apply to mere "effective" purchases and sales.

*Vine v. Beneficial Finance Co.*, 374 F.2d 627 (2d Cir. 1967), which Monk may cite for his "effective" purchase/sale concept, is a fraud case, not an insider-trading case. *Vine* articulated the "forced sale" doctrine in order to confer on a shareholder whose shares were canceled in a merger standing to assert a §10(b) fraud claim. Its holding rested on the "in connection with" requirement in that statute that was intended by Congress to reach a broader range of potential defendants than those who actually purchase or sell on inside information. *See id*. at 634-35. Our research revealed no case in which the doctrine has been expanded to meet the "purchasing or selling" requirement for insider-trading liability.

Monk's new allegation that his shares were "effectively sold" only highlights another flaw in his claim: He does not say *to whom* his shares were sold. (*See* SAC ¶ 148.) Monk concedes it was not Mr. Zhang, alleging only that Mr. Zhang purchased "through" one of the Capital Defendants (SAC ¶ 321(d)-(e)). But an allegation that Mr. Zhang purchased "through" another defendant is just a tacit admission that Mr. Zhang was not himself a purchaser. Nor is Mr. Zhang one-and-the-same with either of the Capital Defendants. He owned only 15% of Capitalhold's equity (and even then, only indirectly) and none of Capitalcorp's. (*See* SAC ¶ 129). There is no authority for the proposition that being an investor (especially a minority investor) in a purchaser makes the investor a purchaser for insider-trading purposes.

5

For the same reason, Capitalcorp cannot be held liable for insider trading.  Monk alleges that he "sold" his shares in a going-private transaction. (*See, e.g*., SAC ¶¶ 1, 32 (alleging that Monk "sold" his ADS "as a result of the Merger," defined as "a transaction to take [Shanda] private")).  In a going-private transaction, "a private firm uses cash to acquire the publicly held stock of a publicly traded company." Robert P. Bartlett III, *Going Private but Staying Public: Reexamining the Effect of Sarbanes-Oxley on Firms' Going-Private Decisions*, 76 U. Chi. L. Rev. 7, 11 (2009).  Here, as Plaintiff acknowledges (SAC ¶ 321(b)), it was Capitalhold – owned by Buyer Group 5 (SAC ¶ 150) – that funded the payment of merger consideration to former Shanda shareholders whose shares and ADS were canceled in the Transaction.  Plaintiff does not and cannot allege that Capitalcorp paid any portion of the merger consideration, directly or indirectly.  (*Compare* SAC ¶ 321(b) (alleging that Capitalhold was "responsible for distributing the money … used to pay the merger consideration") *with* SAC ¶ 321(c) (alleging no payment by Capitalcorp)).

The Court has already held that Monk's insider-trading claim against Shanda fails because it did not pay the merger consideration and was simply the object of the merger transaction.  (*See* 2020 Op. pp. 6-7).[2]  The same rationale should also compel dismissal of Plaintiff's insider-trading claim against Capitalcorp.  Capitalcorp was simply the wholly-owned subsidiary of Capitalhold that was organized to serve as the vehicle for the merger with Shanda.

---

[2]  In finding that Shanda did not pay the merger consideration, and so was not a purchaser (2020 Op. p. 7), the Court stated: "The Final Proxy and Merger Agreement indicate that the entities that paid for the shares were Capitalhold … and Capitalcorp."  We respectfully submit that, in fact, the documents cited by the Court unambiguously state that only Capitalhold would fund the merger consideration, *not* Capitalcorp.  *See* Final Proxy Statement (ECF 45-1 p. 86 ("Parent [defined as Capitalhold] will deposit with the Paying Agent … cash in an amount sufficient … to pay the Merger Consideration") and Merger Agreement (ECF 62-1 §2.04(a) (substantially the same language).

Monk alleges that "Shanda was merged into Capitalcorp" (SAC ¶ 150), while the Plan of Merger states that Capitalcorp was merged "with and into Shanda." (*See* ECF 62-1, p. 1, first WHEREAS clause). Either way, both Shanda and Capitalcorp were simply the objects of the merger and neither was a "purchaser" of Shanda equity.

So, in sum, even assuming that the cancellation of Monk's ADS in exchange for a chit to receive merger consideration constituted "purchasing or selling," the only entity that might be regarded as the "purchaser" was Capitalhold, and not Capitalcorp. (*See* SAC ¶ 321(b) ("Capitalhold became the owner of 100% of the equity of Shanda); SAC ¶ 150 (to the same effect)).

b. <i>The SAC does not allege that Mr.</i><br><i><u>Zhang "tipped" the Capital Defendants.</u></i>

Nor has Plaintiff adequately alleged that Mr. Zhang "tipped" Capitalhold or Capitalcorp with inside information. To begin with, there is no allegation that Mr. Zhang had any information that the Special Committee did not also have. Further, Plaintiff has failed to plead facts plausibly suggesting that Mr. Zhang passed inside information to the Capital Defendants with knowledge that it would be used by either to gain an advantage in negotiations with the Special Committee. *See S.E.C. v. Obus*, 693 F.3d at 287 ("[T]here is a valid defense to scienter if the tipper can show that he believed in good faith that the information disclosed to the tippee would not be used for trading purposes."). That would not be possible, because Mr. Zhang had no information that was not already known to the Special Committee.

c. <u><i>Count II of the SAC is time-barred as against the Capital Defendants.</i></u>

Count II of the SAC alleges insider-trading liability under Section 10(b), not under Section 20A. Section 10(b) claims are subject to the limitations and repose provisions set forth in 28 U.S.C. §1658(b), which states, in pertinent part, that "a private right of action that involves

7

a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws" must be brought within "2 years after the discovery of the facts constituting the violation; …"  28 U.S.C. §1658(b)(1); *see In re Veon Ltd. Sec. Litig.*, 2018 WL 4168958, at \*11 (S.D.N.Y. Aug. 30, 2018) (Carter, J.) (dismissing §10(b) claims under §1658(b)(1)).

Here, Plaintiff admits that the "facts constituting the violation" were fully revealed to him no later than April 25, 2017, when the Cayman Islands trial court issued the decision that Plaintiff claims shows that he was defrauded.  (*See* SAC ¶¶ 151-79).

Yet Plaintiff did not seek leave to file any claim against Capitalhold until March 9, 2020 (ECF 68 and 68-1) – *almost three years* later.  *See Rothman v Gregor*, 220 F.3d 81, 96 (2d Cir. 2000) (date of filing motion for leave to amend to add new defendants "constitutes the date the action was commenced for statute of limitations purposes" (citation omitted)); *see also Bensinger v. Denbury Res. Inc*., 31 F.Supp.3d 503, 509 (E.D.N.Y. 2014) (Where "a pre-motion letter requesting leave to move to file an amended complaint ... puts the defendants on notice of the claims sought to be asserted, it can serve to commence the action for statute of limitations purposes.").  Accordingly, Count II's §10(b) claim against Capitalhold is time-barred.

The §10(b) claim against Capitalcorp is even more tardy.  Neither Plaintiff's March 9, 2020 pre-motion letter, nor that letter's enclosed proposed draft of a second amended complaint, gave notice that Plaintiff wanted to sue Capitalcorp.  Thus, the commencement of the action as against Capitalcorp (for statute of limitations purposes) did not occur until the actual filing of the SAC, on October 23, 2020 – *more than three-and-a-half years* after the Cayman Islands appraisal decision provided him with the "facts constituting the violation."

8

Accordingly, Count II should be dismissed as time-barred as against the Capital Defendants. *See Fogel v Wal-Mart de Mexico SAB de CV*, 2017 WL 751155, at \*9 (S.D.N.Y. Feb. 27, 2017) (dismissing as time-barred Section 10(b) claims against defendants named for the first time in amended complaint filed more than two years after (i) the plaintiff's purchase of ADRs and (ii) the publication of an article exposing bribery concealed by defendant issuer), *affd sub nom. Fogel v Vega,* 759 Fed.Appx. 18, 2018 WL 6753799 (2d Cir. Dec. 26, 2018).

**4.       Count IV Of The SAC Should Be Dismissed As Against Mr. Zhang**

Finally, upon dismissal of all Exchange Act claims against Shanda, the SAC's fourth and final Count, alleging §20(a) control person liability against Mr. Zhang for Shanda's alleged Exchange Act violations, should also be dismissed. *In re Wachovia Equity Sec. Litig*., 753 F.Supp.2d 326, 379 (S.D.N.Y. 2011) ("Because the Plaintiff[] ha[s] failed to state a primary violation under Section 10(b), [he] cannot establish control person liability under Section 20(a).").

CONCLUSION

For the reasons set forth above and incorporated from the Shanda MOL, the SAC should be dismissed as against Mr. Zhang and the Capital Defendants, with prejudice.

Dated: June 11, 2021                          TRACHTENBERG RODES & FRIEDBERG LLP


                                              By: ___*/s/ David G. Trachtenberg*_____
                                                     David G. Trachtenberg
                                              420 Lexington Avenue – Ste 2800
                                              New York, New York  10170
                                              (212) 972-2929

                                              *Attorneys for Defendants Yingfeng Zhang,*
                                              *Capitalhold Limited and Capitalcorp Limited*

9